661 So.2d 107 (1995)
Jesse HODGES, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-2474.
District Court of Appeal of Florida, Third District.
September 13, 1995.
Rehearing Denied October 25, 1995.
*108 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Douglas J. Glaid, Assistant Attorney General, for appellee.
Before BARKDULL, COPE and GREEN, JJ.
GREEN, Judge.
Jessie Hodges was convicted of manslaughter and carrying a concealed firearm after a trial by jury. On this appeal, he challenges the denial of his motion for judgment of acquittal on the manslaughter charge where the State's evidence disclosed that Hodges randomly fired a gun in and about a hostile crowd but the victim was killed when another person unknown to Hodges accidentally discharged another gun while seeking refuge from Hodges' gunfire. Hodges argues that the accidental shooting by the other person, later identified as Andre Thompson, was an independent, intervening cause of the victim's death which superseded his negligence. We agree and reverse the manslaughter conviction.[1]
On the date of the tragic incident, Hodges was a member of the Sigsbee Naval Base in Key West, Florida. He and two other members of the base  Russell Brown and Tyrone Jones  drove to a residential section of Key West in the early evening hours. While there, they became embroiled in a verbal altercation with some of the local residents. *109 The three naval members left the area and returned to the base. They later returned to the site of the earlier altercation but this time Hodges was armed with a 9mm pistol. When they arrived, Brown got out of the car and, in a loud manner, began to converse with one of the local residents about what had transpired earlier. A crowd which had formed in an adjacent lot began to verbally respond to Brown in an angry manner. As Brown continued to speak, the crowd moved in closer and the antagonism intensified.
Hodges suddenly emerged from the vehicle and positioned himself near the crowd. Hodges was armed with his pistol at the time but he concealed it under his clothing. Thompson, who had been observing Hodges, decided to immediately arm himself with a loaded .380 Lawson semi-automatic pistol which he spotted on a nearby table in the lot. At all times material hereto, the gun remained in one of Thompson's hands. Hodges did not know Thompson nor did he know that Thompson had armed himself. Suddenly, for no apparent reason, Hodges pulled his gun from his clothing and randomly fired above and around the hostile crowd. The crowd quickly dispersed after Hodges fired the the first shot.
Thompson testified that he immediately sought refuge from Hodges' gunfire by dropping to the ground. At the time, Thompson was still holding the semi-automatic pistol in his right hand. Thompson further testified that as he hit the ground, the pistol accidentally "kicked off" but he did not know the direction in which the gun was fired. There was no evidence to contradict Thompson's testimony in this regard. The undisputed evidence revealed that the bullet that had been accidentally discharged from Thompson's firearm struck and killed the victim  Creighton Miller  who had been standing near Thompson. Ironically, Miller was Thompson's life long close friend and there was no evidence of any animosity between the two at the time. Upon seeing Miller on the ground, Thompson immediately went over and attempted to revive him. When his efforts proved unsuccessful, Thompson got up from the ground and fired four more shots in Hodges' direction. During the trial below, Thompson testified that he fired these additional shots in response to Hodges' gunfire, but Thompson acknowledged that none of Hodges' shots were ever fired in his direction.
Hodges was charged by information with manslaughter by culpable negligence, attempted second-degree murder and carrying a concealed firearm. At the close of the State's case, Hodges moved for a judgment of acquittal on the counts for manslaughter and attempted second-degree murder. The trial court denied the motion on the manslaughter count but granted the same on the attempted second-degree murder count. The jury subsequently convicted Hodges on the remaining two counts.
The pertinent provision of the manslaughter statute under which Hodges was charged and convicted provides simply that: "[t]he killing of a human being by the ... culpable negligence[2] of another, without lawful justification ... and in cases in which such killing shall not be excusable homicide or murder ... shall be deemed manslaughter ..." § 782.07, Fla. Stat. (1993). The two affirmative elements of the offense to be proven in this case are: "(1) the killing; and (2) a causative link between the death ... and the ... culpable negligence." Cunningham v. State, 385 So.2d 721, 722 (Fla. 3d DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981). It is the second element  the causative link  between Hodges' act and the act which directly resulted in the victim's demise which is at issue on this appeal. Hodges essentially *110 maintains that Thompson's accidental discharge of the fatal bullet was an independent intervening act for which Hodges cannot be held criminally accountable.
In determining whether a defendant's conduct was a cause-in-fact of a prohibited consequence in result-type offenses such as manslaughter, this court and others, with rare exception, have uniformly followed the traditional "but for" test.[3]See, e.g., Velazquez v. State, 561 So.2d 347, 350 (Fla. 3d DCA), cause dismissed, 569 So.2d 1280 (Fla.), rev. denied, 570 So.2d 1306 (Fla. 1990):
"Under this test, a defendant's conduct is a cause-in-fact of the prohibited result if the said result would not have occurred "but for" the defendant's conduct; stated differently, the defendant's conduct is a cause-in-fact of a particular result if the result would not have happened in the absence of the defendant's conduct."
Id. It may be asserted that Hodges' initiation of the gunfire was certainly a cause-in-fact of Miller's death in that had this not occurred, Thompson would not have accidentally discharged his weapon while seeking refuge from Hodges' gunshots. But the question presented to us is whether Hodges' actions were the legal cause of Miller's death. See Cunningham, 385 So.2d at 723 ("In logic, all the antecedents which coalesce in the occurrence of an event are its causes; the concern of the law is more immediate."). Stated differently, the question is whether Thompson's negligence "was the superseding cause, so devoid of relation" to the negligence of Hodges that Hodges "should not be assessed with the blame for what ultimately transpired." Id.
"Criminal responsibility for manslaughter should be determined by considering the act that resulted in the death from all of the surrounding circumstances, and not from considering the result alone." Penton v. State, 548 So.2d 273, 275 (Fla. 1st DCA), rev. denied, 554 So.2d 1169 (Fla. 1989). "Because the consequences of a determination of guilt in a criminal case are far more severe than the consequences suffered by a defendant in a tort action, a closer relationship between the result effected and that intended or hazarded is required." Id. Indeed,
"[e]ven where a defendant's conduct is a cause-in-fact of a prohibited result ... Florida and other courts ... have ... declined to impose criminal liability (1) where the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct, or (b) [sic] where it would otherwise be unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result."
Velazquez, 561 So.2d at 351.
Guided by these considerations, we conclude that Thompson's accidental shooting of the victim was an independent, superseding event for which Hodges cannot be held criminally liable. We note that Thompson initially armed himself without any provocation or direct threat from Hodges. Further, Thompson continued to move about the angry crowd with a loaded firearm in hand prior to the firing of the first shot by Hodges. It was uncontroverted at the trial below that Thompson's actions were without legal justification and we find it to be fundamentally unfair to impose criminal responsibility upon Hodges for the independent irresponsible acts of another.
Thus, for the foregoing reasons, we reverse the trial court's denial of Hodges' motion for judgment of acquittal on the count for manslaughter with directions that he be discharged as to this offense.
Reversed.
NOTES
[1] Hodges has not challenged his conviction or sentence for carrying a concealed firearm on this appeal.
[2] Case law defines "culpable negligence" as follows:

"The culpable negligence required to sustain a manslaughter charge must be of a gross and flagrant character, evincing reckless disregard of human life or of the safety of persons exposed to its dangerous effects; or that entire want of care which would raise the presumption of indifference to consequences; or such wantonness or recklessness or grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others, which is equivalent to an intentional violation of them."
In the Interest of J.C.D., 598 So.2d 304, 305 (Fla. 4th DCA 1992) (quoting Preston v. State, 56 So.2d 543, 544 (Fla. 1952)); see also Fla.Std.Jury Instr. (Crim.) 69-70.
[3] In cases where two defendants acting independently and not in concert with one another commit two separate acts each of which alone is sufficient to bring about the prohibited result, the courts have abandoned the "but-for test" in favor of the "substantial factor test." See Velazquez, 561 So.2d at 351. This exception, however, is inapplicable to the facts of this case.