751 So.2d 552 (1999)
STATE of Florida, Petitioner,
v.
Frederick Van HUBBARD, Respondent.
No. 94,116.
Supreme Court of Florida.
December 16, 1999.
*553 Robert A. Butterworth, Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Stephen R. White, Assistant Attorney General, Tallahassee, Florida, for Petitioner.
Robert R. Kimmel of Law Offices of Kimmel & Batson, Chartered, Pensacola, Florida, for Respondent.
LEWIS, J.
We have for review Hubbard v. State, 748 So.2d 288 (Fla. 1st DCA 1998), based upon certified conflict with Melvin v. State, 677 So.2d 1317 (Fla. 4th DCA 1996). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve Hubbard in part and quash it in part, approve Melvin under the reasoning expressed herein, and remand for proceedings consistent herewith.

PROCEEDINGS BELOW
Respondent Frederick Van Hubbard (Hubbard) was convicted of DUI manslaughter. Hubbard claimed on appeal that the trial court erred in utilizing a standard jury instruction adopted by this Court and not instructing the jury pursuant to a special requested jury instruction containing a negligence element.[1] The First District agreed and reversed and remanded for a new trial. The court began its analysis by noting that the statute at issue, section 316.193, Florida Statutes (1995), was amended in 1986 and construed by this Court three years later in Magaw v. State, 537 So.2d 564 (Fla.1989). Hubbard, 748 So.2d at 289. While emphasizing that Magaw interpreted the amended statute as containing an explicit causation requirement, the court acknowledged that it "makes no mention of negligence or deviation from a reasonable standard of care" by the operator of an automobile. Hubbard, 748 So.2d at 289. Nevertheless, the First District noted that a majority of Florida's district courts of appeal have interpreted Magaw as reading a simple negligence element into the crime of DUI manslaughter. Hubbard, 748 So.2d at 290. The court also recognized the Fourth District's contrary interpretation in Melvin, 677 So.2d at 1318, that Magaw did not "requir[e] that the standard instruction be *554 broadened to specify lack of care as a distinct element."
Turning to the case at hand, the First District detailed that over Hubbard's objection the trial court used the standard jury instruction for DUI manslaughter adopted by this Court in 1992. See Hubbard, 748 So.2d at 291 (citing Standard Jury Instructions-Criminal Cases No. 92-1, 603 So.2d 1175, 1195 (Fla.1992)). That instruction precisely mirrored the elements of DUI manslaughter adopted in this Court's 1992 opinion, which contained an explicit causation requirement but made no mention of negligence or deviation from a standard of care. The First District then noted that this Court recently adopted a revised DUI manslaughter standard jury instruction, which again cited Magaw in support of the causation element while remaining silent regarding negligence or deviation from a standard of care. Nevertheless, while acknowledging that sequence of events, the court ultimately reversed the trial court's ruling and certified conflict with Melvin, reasoning:
Of course, the fact that the Supreme Court has adopted a standard jury instruction does not make that instruction the substantive law of Florida. See Steele v. State, 561 So.2d 638, 645 (Fla. 1st DCA 1990) ("While the standard jury instructions are intended to assist the trial court in its responsibility to charge the jury on the applicable law, the instructions are intended only as a guide, and can in no wise relieve the trial court of its responsibility to charge the jury correctly in each case.") Nevertheless, we cannot completely ignore the fact that twice, since the Magaw opinion, the Florida Supreme Court has adopted standard jury instructions that do not contain a negligence element. This may well be because, despite the language in the Magaw opinion, the substantive statute for DUI manslaughter does not contain any reference to negligence. See § 316.193(3)(c)3, Fla. Stat. (1995). In its brief in this case, the State urges that "`causation' adequately covers the statutory topic, without an explicit digression into `negligence.'" The State's position is not completely without logical force, given the appellant's concession at oral argument, that, if negligence must be part of the jury charge, the standard instruction (adopted less than a week before this case was argued) will never be legally sufficient in a DUI manslaughter case where causation is contested. Nevertheless, we follow the precedent of this court and others and hold that the trial court erred by failing to give the Magaw instruction. In hopes that the Supreme Court will soon resolve this question that has arisen repeatedly in the nine years since Magaw, we certify direct conflict with the Fourth District's Melvin decision.
Hubbard, 748 So.2d at 291.
The First District also found that the trial court improperly admitted evidence that Hubbard's driving privileges had been suspended in the past. Id. During cross examination of a Florida Highway Patrol investigator, Hubbard had elicited testimony that he had a valid driver's license when the deadly accident occurred. The State did not object to Hubbard's question. After the State advised that it intended to have the investigator testify that Hubbard's license had been previously suspended, the trial court ruled, over objection, that Hubbard opened the door on cross-examination to such a line of questioning. Id. The investigator testified accordingly on redirect examination. The First District concluded that the investigator's testimony was inadmissible under section 90.403, Florida Statutes (1995), "because the danger of prejudice outweighed any probative value that could have been attributed to the fact of prior license suspensions." Id. at 288-292.

LAW AND ANALYSIS
This case implicates tort as well as criminal law principles, while also involving the *555 proper roles of the legislature and judiciary in establishing and defining criminal offenses. Although the issue presented concerns the standard jury instruction for DUI manslaughter, it cannot be properly resolved without an extensive examination of the DUI manslaughter statute first enacted in the early part of this century[2] and our periodic construction thereof. A review of cases from other jurisdictions is also instructive.

DUI Manslaughter Statute
To place the current state of the law in context, we begin by reviewing the evolution of the DUI manslaughter statute, our case law construing the statute, and the recently adopted DUI manslaughter standard jury instruction. Under our case law for the last 75 years, simple negligence has been something of a subliminal or presumed underlying element of DUI manslaughter.[3] That is, the Legislature determined "that it is criminal negligence for a person in an intoxicated condition to attempt to drive an automobile upon the highways of this state and that if death results to any person while so doing, such initial negligence will be imputed to the act itself and the driver held guilty of manslaughter." Cannon v. State, 91 Fla. 214, 218, 107 So. 360, 362 (1926) (emphasis added).[4] Or, stated another way, "[t]he provision of the statute with reference to the death of a person being `caused' by the operation of the car is the equivalent of stating that death resulted from his misconduct which had its inception at the time he took control of the car and proceeded to operate it while not in possession of his faculties." Roddenberry v. State, 152 Fla. 197, 202 11 So.2d 582, 585 (1942).[5]
As to a negligence element, we explicitly stated that "there is no burden upon the state to prove that at the time of the incident the defendant was negligent. That element is established if it be shown that he was not, at the time, in possession of his faculties due to the voluntary use of intoxicants." Id. at 201, 11 So.2d 582, 11 So.2d at 585. In a similar vein, another opinion from that era defined DUI manslaughter as "the causing of the death of a human being by the operation of a motor vehicle while intoxicated." Tootle v. State, 100 Fla. 1248, 1250, 130 So. 912, 913 (1930). Thus, in that case we concluded that "[i]t was not necessary to allege culpable negligence of the defendant in the operation of the motor vehicle, as that is not a specific element of the offense defined by the particular statute."[6]Tootle, 100 Fla. at 1251, 130 So. at 913.[7]
More recently, we construed section *556 316.193's precursor statute[8] in Baker v. State, 377 So.2d 17 (Fla.1979). There, the defendant challenged the constitutionality of the DUI manslaughter statute on the basis that it did not require a causal connection between the intoxication and the resulting fatality. We initially surveyed our case law and concluded that neither specific intent nor a causal connection between the prohibited act of driving while intoxicated and the resulting death were elements of DUI manslaughter. Id. at 18. From that point of departure, we rejected Baker's substantive due process argument, reasoning that:
Statutes which impose strict criminal liability, although not favored, are nonetheless constitutional, particularly when the conduct from which the liability flows involves culpability or constitutes malum in se as opposed to malum prohibitum. Two classic examples of such legislation are statutes which impose severe criminal sanctions where a homicide occurs during the commission of a felony and where one has intercourse with a female under a prescribed statutory age. In the case of felony murder, there need be no showing of causation or active participation by the defendant in the homicide so long as he is proven to have been a participant in the felony out of which the homicide occurred. In the instance of statutory rape it is no defense that the defendant actually believed the female to be in excess of the prohibited age. Regina v. Prince, 13 Cox Crim.Cas. 138 (1875), early on settled the validity of statutory rape legislation. As recently as 1978 the United States Supreme Court conceded the constitutional authority of the several states to enact felony murder statutes. Lockett v. Ohio, 438 U.S. 586, 602, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
That the legislature intended section 860.01(2) to have strict liability consequences is beyond peradventure. Cannon v. State was decided by this Court in 1926. Decisions of this Court and of the district courts of appeal since that date have consistently held that negligence and proximate causation are not elements of the crime described in section 860.01(2). The legislature's reluctance to revisit the statute, in spite of ample opportunity, leads to the conclusion that the judicial construction of section 860.01(2) accurately reflects legislative intent.
[Is] section 860.01(2) a rational response to a real problem? We must respond that (i) the problem of drunken drivers operating motor vehicles on the highways of this state is pernicious and real, and (ii) the response embodied in section 860.01(2) can be justified on deterrence grounds. Both are supported by our recent decision in Ingram v. Pettit, 340 So.2d 922 (Fla.1976), where, in the context of a civil action for punitive damages, the statistics regarding fatalities resulting from accidents where drinking was a contributing factor are *557 recited, and the public policy of punishment of drunk drivers as a deterrent is recognized.
Although the majority of legal scholars adjure [sic] strict criminal liability on the grounds that it is indefensible to impose criminal sanctions in the absence of mens rea and that such liability is not an effective deterrent, there are those who make a respectable argument for the rationality of strict criminal liability. Furthermore, section 860.01(2) is not the classic strict liability statute criticized by the commentators. Even in the parlance of the ALI Model Penal Code, which is very critical of strict criminal liability, the act of operating a motor vehicle while intoxicated involves culpability. We are not here dealing with the type of statute which imposes strict criminal liability for mere negligence or an act malum prohibitum.
Given, then, that the operation of a motor vehicle while intoxicated is a reckless (and therefore culpable) act, is it rational for the legislature to impose criminal sanctions for any death which occurs without regard to the tort law concept of proximate causation between operation of the automobile and the death? If the legislature can reasonably conclude that such a measure operates as a deterrent to those who create a recognized and serious social problem, then certainly it is. Although, as noted, legal scholars have questioned the efficacy of the deterrent effect of strict liability statutes, an argument can be made that the presence of strict liability sanctions for a particular activity has the effect not only of inducing persons to engage in that activity with greater caution, but may also have the effect of keeping a relatively large class of persons from engaging in the conduct at all. This thesis cannot be proved empirically, but neither can the position of the opponents of strict criminal liability. Consequently, it cannot be asserted that the legislature has acted irrationally in enacting section 860.01(2) where it is just as plausible as not that it does have the desired deterrent effect.
Baker, 377 So.2d at 19-20 (footnotes omitted). On the basis of that reasoning, we held that neither negligence nor proximate causation was an element of DUI manslaughter. Id. at 20.
Justice Boyd dissented, arguing that "[b]ecause of the lack of required causal connection between the intoxication and the death, the [DUI] manslaughter statute applies to conduct that is no more culpable than the conduct of one who drives while intoxicated to the point at which his faculties are impaired." Id. at 22 (Boyd, J., dissenting). Consequently, Justice Boyd concluded that "[s]ince the conduct of one who drives while intoxicated is of the same degree of culpability regardless of whether such a collision and death occur, the provision for a possible maximum sentence of fifteen years' imprisonment constitutes excessive punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution." Id.[9]
Ten years after issuing Baker, we again addressed the DUI manslaughter statute in Magaw v. State, 537 So.2d 564 (Fla. 1989). There, the issue presented was whether the holding in Armenia was still valid in light of the 1986 legislative amendments to section 316.193(3)(c). After summarizing the holdings and reasoning in Baker and Armenia, we began our analysis by comparing the wording of the pre-and *558 post-amendment statute and examining its legislative history to determine if a causation requirement had been added. Magaw, 537 So.2d at 565-67. In particular, we quoted a staff analysis which stated "there now must be a `causal connection' between the operation of the vehicle by the offender and the resulting death" and that the bill "insert[s] the element of causation into the definitions of DUI crimes." Id. at 566-67. We also found persuasive an excerpt from a floor debate on the proposed amendment wherein one senator remarked that "[t]he new language does have the word cause, and I think it's the intent of the drafters of the bill that causation be a factor in a DUI manslaughter conviction." Id. at 567.
Upon consideration of those factors, we concluded that the 1986 amendments to section 316.193(3) introduced causation as an element of the crime of DUI manslaughter.[10]Id. However, we attached several caveats to that conclusion:
We caution ... that the statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle should have caused the accident.
Id. Then, in what has been interpreted as reading a required simple negligence element into the statute,[11] we stated, "Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice." Id.
The revised DUI manslaughter standard jury instruction we recently adopted mirrors the DUI manslaughter statute in all material respects. See Standard Jury Instructions in Criminal Cases (97-2), 723 So.2d 123, 146-48 (Fla.1998). The relevant portion of the instruction is as follows:
Before you can find the defendant guilty of DUI Manslaughter, the State must prove the following three elements beyond a reasonable doubt:
1. (Defendant) drove or was in actual physical control of a vehicle.
2. While driving or while in actual physical control of the vehicle, (defendant)
a. was under the influence of [alcoholic beverages] [a chemical substance] [a controlled substance] to the extent that[his][her] normal faculties were impaired,
or
b. had a blood or breath alcohol level of 0.08 or higher.
3. As a result, (defendant) caused or contributed to the cause of the death of (victim).
Id. at 146-47. The elements of the crime provided in the instruction track the precise statutory language and, as the First District noted, the instruction "mentions neither negligence nor deviation from a standard of care," Hubbard, 748 So.2d at 291, although the marginal note to the instruction cites Magaw as authority for the causation element: "As a result, (defendant) caused or contributed to the cause of the death of (victim)."

Melvin
In Melvin, the defendant's van turned in front of the victim's oncoming vehicle, causing a collision. 677 So.2d at 1317. The victim eventually died from injuries sustained in the collision. Evidence adduced at trial showed that Melvin was *559 intoxicated at the time of the accident. Melvin requested a modified jury instruction based on his interpretation of Magaw.[12] The trial court denied the requested instruction. Melvin was subsequently convicted of DUI manslaughter.
The Fourth District affirmed the conviction on appeal, reasoning as follows:

Magaw has been interpreted as recognizing that for DUI manslaughter, the state must prove that the defendant was negligent and that this negligence was a contributing cause of the death. See Foster v. State, 603 So.2d 1312 (Fla. 1st DCA 1992), rev. denied, 613 So.2d 4 (Fla.1993); Parker v. State, 590 So.2d 1027 (Fla. 1st DCA 1991), rev. denied, 599 So.2d 1279 (Fla.1992). In Murphy v. State, 578 So.2d 410 (Fla. 4th DCA 1991), disapproved on other grounds, State v. Chapman, 625 So.2d 838 (Fla. 1993), we recognized, distinguishing DUI manslaughter from vehicular homicide, that DUI manslaughter "requires proof of simple negligence while operating an automobile under the influence of alcohol." Id. at 411, citing Magaw.

We, nevertheless, find no error in the court's denial of the requested instruction. The standard jury instruction for DUI manslaughter requires a finding that by reason of operation of the vehicle, Melvin caused or contributed to the victim's death. Explicit in this instruction is a determination by the jury of causationMelvin had to cause the death by reason of his operation of his vehicle. Although in Magaw the court elaborated on the meaning of the term "caused," we do not construe that opinion as requiring that the standard instruction be broadened to specify lack of care as a distinct element. For example, based on the standard instruction, if the jury concluded that someone else had caused the death, perhaps another driver, Melvin would be found not guilty. Similarly, if the death was the result of factors beyond Melvin's control, he would be not guilty. Either of these scenarios, not involved here, would preclude a finding of causation and result in a defendant's acquittal as a defendant may be convicted only on proof of causation. We have considered Melvin's argument in reliance on the First District's decision in Foster, 603 So.2d at 1312. However, in Foster, the court did not hold the DUI manslaughter instruction to be per se misleading, nor did it mandate the use of an alternative instruction.
Melvin, 677 So.2d at 1318.

Other Jurisdictions
A split of authority exists on whether simple negligence is or should be an element of DUI manslaughter.[13] Several jurisdictions have found that simple negligence is not an element of DUI manslaughter. See, e.g., People v. Garner, 781 P.2d 87 (Colo.1989);[14]State v. Taylor, 463 So.2d 1274 (La.1985); State v. Wong, 125 N.H. 610, 486 A.2d 262 (1984); State v. Boag, 154 Or. 354, 59 P.2d 396 (1936); State v. Caibaiosai, 122 Wis.2d 587, 363 N.W.2d 574 (1985); Balsley v. State, 668 P.2d 1324 (Wyo.1983), abrogated on other grounds by State v. Keffer, 860 P.2d 1118 (Wyo.1993). In contrast, Utah's "automobile *560 homicide" statute requires simple negligence as an element of the crime, see State v. Hamblin, 676 P.2d 376 (Utah 1983),[15] as does South Carolina's "felony DUI" statute, see State v. Cribb, 310 S.C. 518, 426 S.E.2d 306 (1992),[16] and the corresponding Mississippi statute. See Miss. Code Ann. § 63-11-30(5) (1999) ("operates any motor vehicle ... in a negligent manner"). California has two DUI manslaughter statutes, with one requiring gross negligence[17] and the other only requiring simple negligence.[18] Notably, in these jurisdictions the presence or absence of explicit statutory language has determined whether negligence is an element of DUI manslaughter.
In commenting on the public policy underlying "strict liability" crimes, the Wisconsin Supreme Court wrote that "[u]nder our laws, some acts performed with no particular mental state and even without a particular result, are considered sufficiently antisocial enough to qualify as a crime, [for example] ... (sexual assault using a dangerous weapon)." Caibaiosai, 363 N.W.2d at 577. On the discrete issue of drunk driving,[19] the court explained:
The legislature has determined that combining the operation of a motor vehicle with being in an intoxicated state is conduct which is malum prohibitum and is pervasively antisocial. Since the conduct is considered inherently evil, it conceptually cannot be divided into portions which are bad and portions which are not bad. Section 346.63, Stats., entitled "Operating under the influence of intoxicants" is violated by a person who, one, operates a motor vehicle, and two, is at the time under the influence of an intoxicant. The commission of the offense does not require any erratic or negligent driving. Because driving under the influence of an intoxicant is malum prohibitum it is impossible to separate the intoxication from the driving or the driving from the intoxication. The result is the potentially lethal and illegal combination of driving while intoxicated.
Section 940.09, Stats., requires that the prosecution prove and the jury find beyond a reasonable doubt a causal connection between the defendant's unlawful conduct, operation of a motor vehicle while intoxicated, and the victim's death. The statute does not include as an element of the crime a direct causal connection between the fact of defendant's intoxication, conceptualized as an isolated act, and the victim's death. Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has determined this activity so inherently dangerous that proof of it need not require causal connection between the defendant's intoxication and the death.
. . . .
... So, when a person chooses to operate an automobile while under the influence of intoxicants and has done so deliberately knowing that society has through its legislature established such combined activities as dangerous and when such operation results in death, it may be punished as a felony.

*561 It is negligence per se to operate a motor vehicle while under the influence of intoxicants. Experience has established this conclusion and the legislature has accepted it as a fact in sec. 346.63(1)(a), Stats., and has made such combined activities a class D felony when the operation of the vehicle results in death in sec. 940.09(1)(a). The substantial factor in the cause of the death is the cause in fact of the operation of the vehicle while intoxicated. Section 940.09(1)(a) accepts that the conduct of operating under the influence of intoxicants plus the consequences of death will result in a felony charge. The people of this state through their legislature have determined in sec. 940.09(1)(a) that the operation of a motor vehicle by one who is under the influence of intoxicants is a risk that will not be tolerated.
Id. at 577-78 (emphasis added).
Implicating another facet of this issue, the specter of the "faultless" drunk driver outlined in Justice Boyd's Baker dissent appeared in a recent Rhode Island case, although without the result feared by Justice Boyd. See State v. Benoit, 650 A.2d 1230 (R.I.1994). In that case, the defendant was driving in an extremely intoxicated state with his blood-alcohol content measuring .208, over twice the legal limit. Id. at 1231. However, the evidence adduced at trial showed that it was the victims' car that "left its lane of travel, crossed either a dividing line and/or median strip, and made contact with the defendant's... truck ... in the defendant's lane." Id. Indeed, there was evidence that the intoxicated defendant tried to swerve and avoid the victims' oncoming car. Id. at 1234. The ensuing accident seriously injured the driver of the other car and killed the passenger. The defendant was charged with DUI manslaughter and DUI causing seriously bodily injury. He moved to dismiss both counts on the grounds that the State could not prove that his operation of his automobile proximately caused the death and serious bodily injury of the victims. The trial judge granted the motion and dismissed both counts. Id. at 1231.
On appeal, the Rhode Island Supreme Court first determined that the DUI manslaughter statute contained a proximate cause element.[20]Id. at 1233. From there, the court found that in order for a valid conviction to be obtained, "the state must produce sufficient evidence for a jury to conclude that the defendant's manner of operating his or her motor vehicle was a proximate cause of the victim's death and the collision occurred while the defendant was legally intoxicated." Id. However, the court noted that "this evidence need not necessarily show that the defendant's manner of operating his or her motor vehicle was either reckless or criminally negligent, as there is nothing in the statute to require this." Id. The court made clear that the state did not have to prove that the defendant's intoxication was the proximate cause of the death, but only that "the defendant's operation of his or her motor vehicle was a proximate cause of the death in question occurring while the defendant was legally intoxicated." Id. Under that reasoning, the court concluded that "[t]here is scant evidence in the record other than his presence on the highway to show that the defendant's manner of driving was the proximate cause of the death and injury in question." Id. at 1234 (emphasis added). Consequently, the court affirmed the trial judge's dismissal of the charges. Id.

Statutory Interpretation
As a general proposition, the legislature has the prerogative to define or redefine the elements of a crime. See *562 Perkins v. State, 682 So.2d 1083 (Fla.1996); State v. Hamilton, 660 So.2d 1038 (Fla. 1995); Chapman v. Lake, 112 Fla. 746, 151 So. 399 (1932). While manslaughter was recognized as a common law crime in England as early as the 1600s, see Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 2.1 at 90 (1986), DUI manslaughter is strictly a creature of statute. See § 316.193(3)(c)3, Fla. Stat. (1995). Therefore, it is instructive to examine the plain language of the statute.
Section 316.193 provides, in pertinent part:
(1) A person is guilty of the offense of driving under the influence ... if such person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired; or
(b) The person has a blood or breath alcohol level of 0.08 or higher.
. . . .
(3) Any person:
(a) Who is in violation of subsection (1);
(b) Who operates a vehicle; and
(c) Who, by reason of such operation, causes:
. . . .
3. The death of any human being is guilty of DUI manslaughter, a felony of the second degree....
While the statute clearly has a causation element, it does not explicitly contain a negligence element, in contrast to a related statute such as section 322.34(3),[21] which does include such an element. Thus, at least three principles of statutory construction support a conclusion that simple negligence is not an element of DUI manslaughter. See Florida State Racing Comm'n v. Bourquardez, 42 So.2d 87, 88 (Fla.1949) (observing that "[t]he legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the [statutory language its] generally accepted construction"); Department of Health & Rehabilitative Servs. v. M.B., 701 So.2d 1155, 1160 (Fla.1997) (finding no "consistency" requirement attached to child victim hearsay exception, as opposed to statute defining nonhearsay, thus "demonstrat[ing] that the legislature knew how to impose a `consistency' requirement if desired"); Federal Ins. Co. v. Southwest Fla. Retirement Ctr. Inc., 707 So.2d 1119, 1122 (Fla.1998) (concluding that absence of express language establishing discovery rule for latent defects is "clear evidence that the legislature did not intend to provide a discovery rule" in limitations statute).

Negligence
While a straightforward statutory interpretation eliminates the possibility of a negligence element, a more practical consideration yields the same result. As implied in Caibaiosai, the legal concept of negligence is difficult to apply in a situation where drugs or alcohol substantially affect a person's ability to drive, maneuver, react, and make intelligent decisions. While in most of these cases there is no doubt that the driver's operation of the vehicle causes the accident that kills the victim, that deadly (mis)operation is almost certainly a direct result of the driver's *563 intoxication.[22] Consequently, the notion that the State would have to prove the additional element of negligence appears to be an alien concept in this species of unintended crime. Just as mens rea[23] is inapplicable in a normal manslaughter case,[24] likewise negligence principles appear to have no utility in a DUI manslaughter prosecution under the Florida statute.
More precisely, the fact that someone is intoxicated and drives a particular vehicle which causes another person's death should be enough to satisfy the elements of DUI manslaughter.[25] Intuitively, someone who is intoxicated will not be able to control his or her automobile in a safe manner and make quick decisions and execute maneuvers that will avoid accidents. See Ingram, 340 So.2d at 924-25 (characterizing automobiles as dangerous instrumentalities whose "dangerous propensities are heightened when operated by a person who is, by definition, incapable of exercising vigilance and caution"). Therefore, negligence is simply the wrong prism through which the intoxicated driver's actions should be viewed. If the person's normal faculties are impaired, that person will act accordingly and almost certainly will have a greater chance of causing an accident.[26] Thus, imposing an additional "simple negligence" element would appear to accomplish little.
Further, Benoit underscores the importance of the causation element: the defendant's operation of his or her automobile must cause the accident. There, the court determined that a undisputably drunk driver who, through no misoperation of his own, was struck by another car resulting in the death of another person, cannot be found guilty of DUI manslaughter because the operation of his vehicle did not cause the victim's death. Benoit, 650 A.2d at 1234. The Fourth District recognized that *564 a defendant could not be convicted under such circumstances: "[I]f the jury concluded that someone else had caused the death, perhaps another driver, Melvin would be found not guilty." Melvin, 677 So.2d at 1318. The court also concluded that "if the death was the result of factors beyond Melvin's control, he would be not guilty." Id. In so finding, the Fourth District applied the essential holding in Magaw that the Legislature's 1986 amendments to the DUI manslaughter statute introduced causation as an element of the crime. 537 So.2d at 567.
In the final analysis, our language in Magaw regarding "deviation or lack of care" was dicta,[27] which does not change the import or correctness of the decision. See Continental Assurance Co. v. Carroll, 485 So.2d 406, 408 (Fla.1986) ("[D]icta" is "at most persuasive and cannot function as ground-breaking precedent."). Indeed, it is really a matter of semantics because that language simply elaborated on and emphasized the causation element,[28] and was not intended to read another free-standing element into the crime. Certainly, there is no separate free-standing negligence statutory element. Hence, we conclude that Magaw has been misinterpreted by several district courts as reading a separate and independent negligence element into the crime of DUI manslaughter. Because Magaw properly focused on causation, we do not anticipate that "faultless" drunk drivers will be snared under the standard DUI manslaughter jury instruction, even without the "Magaw" simple negligence element required by the First, Second, and Fifth Districts. Accord Melvin; Benoit. Contrary to the dissenting view, we do not feel that the standard DUI manslaughter jury instruction as presently written creates confusion for a jury as to the applicable law; the DUI manslaughter statute contains the element of causation and does not require proof of the separate and independent element of "simple negligence," which is separate and apart from the causation element. See generally W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30, at 164-65 (5th ed.1984). The legal concepts of causation and negligence are not necessarily interchangeable, particularly under circumstances such as those involved here. Additionally, the causation element of the amended statute was interpreted by this Court in Magaw as not requiring that the conduct of the operator of a vehicle be the sole cause. Thus, contrary to the dissenting view, Magaw did not add an additional element of negligence to the statutory scheme but did define the concept of causation. Therefore, the standard jury instruction reflects this Court's Magaw analysis. Moreover, the 1986 amendments did not add the element of the manner of operation, but included only a nexus between an accident and the operation of a vehicle.
Finally, Hubbard made no request for a jury instruction as proposed by the dissent as a first preferred option to include the phrase "manner of operation" in an instruction and such is not in accordance with the existing statutory elements. Although the dissent carefully does not use the word "negligence", the additional optional jury instruction proposed by the dissent would, in effect, require the State to prove "negligence" as an additional free-standing element of DUI manslaughter, a result with which we cannot agree.

Scienter
As a final consideration, the concerns we voiced in Chicone v. State, 684 So.2d 736 (Fla.1996), do not appear present in the DUI manslaughter context. There, we *565 held that the State was required to prove that the defendant knowingly possessed illegal drugs even though the applicable statutes did not specifically include scienter requirements. Id. at 744. In reaching that result, we reasoned that "if the legislature had intended to make criminals out of people who were wholly ignorant of the offending characteristics of items in their possession, and subject them to lengthy prison terms, it would have spoken more clearly to that effect." Id. at 743. Therefore, we found that "[s]ilence does not suggest that the legislature dispensed with scienter here." Id. at 744. We also noted that interpreting the drug possession statutes without a knowledge requirement would "criminalize a broad range of apparently innocent conduct." Id. at 743 (quoting Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)).
Such a danger does not appear to exist where an intoxicated person enters and drives an automobile and subsequently causes a fatal accident. That is, it would seem unreasonable to label driving while intoxicated as "apparently innocent conduct" requiring a knowledge or at least an independent negligence element. Moreover, the fact that the crime of DUI manslaughter has been on the books for over 75 years without ever containing such an element seems a fair indicator of the Legislature's intent.[29]

Prior Bad Acts Evidence
Although we disapprove the First District's treatment of the standard DUI manslaughter jury instruction issue, we approve its disposition of the prior bad acts evidence issue.[30] The fact that Hubbard had his driving privileges suspended in the past clearly was of slight probative value, which was substantially outweighed by the danger of unfair prejudice. § 90.403, Fla. Stat. (1995); see also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (construing "unfair prejudice" as contained in Federal Rule of Evidence 403 to mean "an undue tendency to suggest decision on an improper basis"); State v. Emmund, 698 So.2d 1318, 1320 (Fla. 3d DCA 1997) (approving trial court's order prohibiting State from using "violent career criminal" statutory terminology because of potential for "jury confusion and unfair prejudice, as well as the risk that the defendant's prior record will become a feature of the case.... The focus of the case should remain on the facts that are actually in dispute."). Here, Hubbard's past driving record was of marginal, if any, relevance in establishing the elements of DUI manslaughter.[31] Accordingly, because we are unable to conclude that the improper admission of this unfairly prejudicial evidence was harmless,[32] Hubbard is entitled to a new trial on this basis.

*566 Summary

In conclusion, we hold that the DUI manslaughter standard jury instruction should not be modified to include a negligence element. We also find that the improper admission of prior bad acts evidence was harmful error which necessitates a new trial. Accordingly, we approve that portion of the district court's decision that reversed and remanded for a new trial on the ground that irrelevant and prejudicial evidence was admitted. We quash that portion that held that it was error to give the standard jury instruction on DUI manslaughter. We approve Melvin under the reasoning expressed herein.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, and QUINCE, JJ., concur.
ANSTEAD, J., concurs specially with an opinion.
PARIENTE, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., specially concurring.
Although I agree with many of the concerns expressed by Justice Pariente, I join in the majority opinion. I write separately to note, however, that the standard jury instruction does deviate from the statute, section 316.193, in a most significant way. As quoted in the majority opinion, section 316.193(3) provides:
(3) Any person:
(a) Who is in violation of subsection (1);
(b) Who operates a vehicle; and
(c) Who, by reason of such operation, causes:

. . . .
3. The death of any human being is guilty of DUI manslaughter, a felony of the second degree....
(Emphasis added). In contrast to this straightforward requirement of causation, the standard jury instruction provides in element 3 that:
3. As a result, (defendant) caused or contributed to the cause of the death of (victim).
(Emphasis added). Hence, the instruction modifies the straightforward causation provision in the statute by adding the alternative "or contributed to the cause" even though that language is not in the statute. This appears to greatly expand the reach of this penal statute.
What has happened is that a civil tort concept has been added to an unambiguous penal manslaughter statute. I believe this is an error of law. The statute should not be altered by incorporating tort concepts into the criminal law without express legislative direction. By this wholesale incorporation of a tort concept into the criminal law we raise more questions than we answer. For example, the broader tort instruction would apparently make someone who may be only one percent at fault in causing an accident one hundred percent criminally liable under the statute. This same result would apparently obtain even if the alleged victim of the crime was the driver of another vehicle and ninety-nine percent at fault for the accident. Of course, we should also note the irony of any incorporation of these tort principles into the criminal law at a time when we know that these very outcomes have been rejected by the Legislature under our prevailing tort law. Hence, the outcome of a civil lawsuit would be totally different than the outcome of a criminal prosecution.
That the standard instruction is flawed is made especially clear by our recent decision in Eversley v. State, 748 So.2d 963 (Fla. 1999), wherein we explained:
Causation consists of two distinct subelements. As legal scholars have recognized, before a defendant can be convicted of a crime that includes an element of causation, the State must prove beyond a reasonable doubt that the defendant's conduct was (1) the "cause in fact" and (2) the "legal cause" *567 (often called "proximate cause") of the relevant harm. See, e.g., 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 3.12, at 390, 392 (2d ed.1986). See also United States v. Pitt-Des Moines, Inc., 970 F.Supp. 1359, 1364 (N.D.Ill.1997), aff'd, 168 F.3d 976 (7th Cir.1999).
In order to establish that a defendant's conduct was the "cause in fact" of a particular harm, the State usually must demonstrate that "but for" the defendant's conduct, the harm would not have occurred. See LaFave & Scott, supra, at 390, 392-94; Pitt-Des Moines, 970 F.Supp. at 1364; Hodges v. State, 661 So.2d 107, 110 (Fla. 3d DCA 1995) (quoting Velazquez v. State, 561 So.2d 347, 350 (Fla. 3d DCA 1990)). A defendant can rebut this showing by demonstrating that the harm would have occurred in any event, regardless of the defendant's conduct. See Pitt-Des Moines, 970 F.Supp. at 1364. In those rare circumstances where "two causes, each alone sufficient to bring about the harmful result, operate together to cause it," the "but for" test becomes impossible to prove. LaFave & Scott, supra, at 394. See also Hodges, 661 So.2d at 110 n. 3; Velazquez, 561 So.2d at 351. In these circumstances, the State may prove "cause-in-fact" causation by demonstrating that the defendant's conduct was a "substantial factor" in bringing about the harm. See La-Fave & Scott at 394-95; Velazquez, 561 So.2d at 351.
In addition to establishing "cause-infact" causation, the State must also demonstrate that the defendant's conduct was the "proximate cause" of the particular harm. Florida courts have considered two basic questions in determining proximate cause: (1) whether the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct and (2) whether it would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result. See Hodges, 661 So.2d at 110; Velazquez, 561 So.2d at 351.
Id. at 967. The Hodges and Velazquez cases relied upon in Eversley also demonstrate the problem with the standard instruction. Hodges and Velazquez point out that "cause in fact" is different from proximate cause; even if a defendant satisfies the "but for" test he cannot be held criminally liable if he is not the proximate cause of the resulting injury. See Hodges, 661 So.2d at 110; Velazquez, 561 So.2d at 351.
With regard to vehicular homicide, the Third District in Velazquez noted:
The "proximate cause" element of vehicular homicide in Florida embraces more, however, than the aforesaid "but for" causation-in-fact test as modified by the "substantial factor" exception. Even where a defendant's conduct is a cause-in-fact of a prohibited result, as where a defendant's reckless operation of a motor vehicle is a cause-in-fact of the death of a human being, Florida and other courts throughout the country have for good reason declined to impose criminal liability (1) where the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct or (b) [sic] where it would otherwise be unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result.
Id. at 351. The import of the distinction between cause-in-fact and proximate cause in this case is that the jury instructions would lead the jury to find the defendant guilty even if the defendant's conduct was not the legal cause of the injury. The jury is simply told that it may find the defendant guilty if the defendant's conduct was a contributing cause of the injury. The jury instruction does not distinguish between the "but for" and "substantial factor" test, and it does not specify that the *568 conduct must proximately cause the accident.
I believe the instructions should be limited to the plain language of the statute or revised to conform to our holding in Eversley.
PARIENTE, J., concurring in part and dissenting in part.
I agree with the majority's reversal for a new trial based on the improper admission of prior bad acts evidence. As to the conflict issue, I would state explicitly what the majority opinion acknowledges implicitly; that is, in order to be convicted of DUI manslaughter, there must be something in the manner of operation of the motor vehicle that causes the accident.
The majority asserts that this dissent confuses the concepts of fault and legal cause. See Majority op. at 564. However, before 1986, the DUI manslaughter statute read in pertinent part, "If the death of any human being is caused by the operation of a motor vehicle by any person while so intoxicated, such person shall be deemed guilty of manslaughter and on conviction shall be punished as provided by existing law relating to manslaughter." § 316.1931, Fla. Stat. (1985) (quoted in Magaw v. State, 537 So.2d 564, 566 (Fla.1989)) (emphasis supplied). As mentioned in Magaw, the 1986 changes added the language that a person is guilty of DUI manslaughter if the person "operates a vehicle" and "by reason of such operation, causes ... [t]he death of any human being." § 316.193(3), Fla. Stat. (Supp.1986) (quoted in Magaw, 537 So.2d at 566). Thus, the 1986 amendments did not simply add the element of causation, but they also added a requirement of connexity between the accident and the manner of operation of the vehicle.
Although in Magaw the Court refers to "causation as an element" added by the statutory amendment, it is clear from our opinion that we were also focusing on the amended statutory language that adds the provision concerning the manner of operation. 537 So.2d at 567. As Justice Grimes stated in Magaw:
We caution, however, that the statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice.

Id. at 567 (emphasis supplied). The majority does not disapprove of this statement, which it labels as "dicta." Majority op. at 564. Instead, the majority explains that this statement "is really a matter of semantics because that language simply elaborated on and emphasized the causation element, and was not intended to read another free-standing element into the crime." Id. (emphasis supplied) (footnote omitted). Moreover, the majority contends that the standard DUI manslaughter jury instruction, as presently written, does not create the possibility of confusing a jury as to the applicable law. See id. I disagree.
As currently written, the relevant portion of the standard DUI manslaughter jury instruction provides: "As a result, (defendant) caused or contributed to the cause of the death of (victim)." Fla. Std. Jury Instr. (Crim.) 103. Under this prong of the DUI manslaughter charge, what is the jury instruction referring to when it says "As a result"? As a result of the defendant's operation of the vehicle? As a result of the defendant's intoxication? As a result of the defendant's intoxication and operation of the vehicle? Or, as a result of defendant's manner of operation of the vehicle? Based on these multiple possibilities, I do not feel as confident as the majority does that an average juror would understand that implicit in this causation requirement is the fact that the defendant's *569 manner of operation caused or contributed to cause the accident.[33]
Both the majority opinion and the Fourth District's opinion in Melvin v. State, 677 So.2d 1317 (Fla. 4th DCA 1996), apparently agree that there must have been something about the defendant's driving that caused the accident. As the Fourth District observed in Melvin:
For example, based on the standard instruction, if the jury concluded that someone else had caused the death, perhaps another driver, Melvin would be found not guilty. Similarly, if the death was the result of factors beyond Melvin's control, he would be not guilty. Either of these scenarios, not involved here, would preclude a finding of causation and result in a defendant's acquittal as a defendant may be convicted only on proof of causation.
Id. at 1318. In addition, the majority relies on the Rhode Island Supreme Court's decision in State v. Benoit, 650 A.2d 1230 (R.I.1994), which the majority claims "underscores the importance of the causation element: the defendant's operation of his or her automobile must cause the accident." Majority op. at 563. In Benoit, the court interpreted Rhode Island's DUI manslaughter statute, which provides in pertinent part:
When the death of any person other than the operator ensues as a proximate result of an injury received by the operation of any vehicle, the operator of which is under the influence of, any intoxicating liquor ... the person so operating such vehicle shall be guilty of "driving under the influence of liquor or drugs, resulting in death".
R.I. Gen. Laws § 31-27-2.2(a) (1983) (emphasis supplied). Interpreting this statutory language, the Rhode Island Supreme Court concluded that in order to sustain a conviction under Rhode Island's DUI manslaughter statute:
[T]he state must produce sufficient evidence for a jury to conclude that the defendant's manner of operating his or her motor vehicle was a proximate cause of the victim's death and that the collision occurred while the defendant was legally intoxicated. We note that this evidence need not necessarily show that the defendant's manner of operating his or her vehicle was either reckless or criminally negligent, as there is nothing in the statute to require this.
Benoit, 650 A.2d at 1233 (emphasis supplied). According to the Rhode Island Supreme Court, even the states with the most lenient proximate cause requirements still require that the prosecution show that the "defendant's manner of operating his or her vehicle caused the injury or death." Id. at 1232. Similarly, the State has this burden under Florida's DUI manslaughter statute.
Contrary to the majority's assertion, I am not advocating that the jury instructions contain an independent element of "simple negligence," separate and apart from the causation element. Rather, I do not find that the DUI manslaughter jury instruction adequately informs jurors that they must find a causal connection between the defendant's manner of operating his or her vehicle and the resulting victim's death before finding the defendant guilty of the crime. In my opinion, the jury instruction as presently written thus creates the possibility of confusing the jury as to the applicable law. This is especially so because, unlike the standard civil jury instructions, the standard criminal jury instructions do not include an instruction explaining legal cause.
I do not suggest that the jury be instructed that the State must prove that the defendant's manner of operating his or her *570 motor vehicle rose to the level of criminal negligence or recklessness. Instead, I suggest that the jury instructions adequately inform jurors of the State's burden under the statute. In order for the State to obtain a valid conviction under the amended statute, the State must prove that the defendant's manner of operating his or her motor vehicle was a legal cause of the victim's death and that at the time of the operation of the vehicle, the defendant was legally intoxicated. Therefore, I would approve the First District's decision in Hubbard v. State, 748 So.2d 288 (Fla. 1st DCA 1998), and adopt an amended instruction to be applied prospectively that would include the following additional underlined language:
1. (Defendant) drove or was in actual physical control of a vehicle.
2. While driving or while in actual physical control of the vehicle, (defendant)
a. was under the influence of [alcoholic beverages] [a chemical substance] [a controlled substance] to the extent that [his][her] normal faculties were impaired,
or
b. had a blood or breath alcohol level of 0.08 or higher.
3. As a result of defendant's manner of operation of [his][her] vehicle while under the influence of [alcoholic beverage] [a chemical substance] [a controlled substance] defendant caused or contributed to the cause of the death of (victim).
An additional option would also be to include the following:
The State is not required to prove that defendant's intoxication was the cause of the accident, but only that any deviation or lack of care on the part of defendant in the operation of the motor vehicle was a legal cause of the accident.
These additions to the jury instructions would be helpful to jurors, while at the same time be consistent with this Court's decision in Magaw.
As Judge Webster observed in Foster v. State, 603 So.2d 1312, 1315 (Fla. 1st DCA 1992), "In criminal cases, the trial judge bears the responsibility of ensuring that the jury is fully and correctly instructed as to the applicable law." While the majority may characterize Justice Grimes' statement in Magaw as "a matter of semantics," majority op. at 564, in my opinion, an amendment to the jury instructions would ensure that the jury was fully instructed on the applicable law and minimize the possibility of juror confusion.
NOTES
[1] Specifically, that portion of the requested instruction read: "If, however, you find that the fatal accident can be attributed in some way to any deviation or lack of care on the part of Frederick Van Hubbard while under the influence of alcoholic beverages, this will suffice for you to find him guilty of DUI manslaughter." Hubbard, 748 So.2d at 290 (emphasis added).
[2] The Florida Legislature first addressed the issue of drinking and driving in 1915. See ch. 6882, Laws of Fla. (1915). The crime of DUI manslaughter was added by amendment in 1923. See ch. 9269, Laws of Fla. (1923).
[3] This crime has also been characterized as a "strict liability" or "reduced intent" offense. See State v. Smith, 638 So.2d 509, 511-13 (Fla.1994) (Kogan, J., concurring in result only).
[4] The statute at issue provided, in pertinent part:

And if the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter and, on conviction, be punished as provided under existing law relating to manslaughter. Ch. 9269, Laws of Fla. (1923).
[5] The DUI manslaughter statute construed in Roddenberry contained the same wording as the statutes previously construed by this Court in Cannon and Tootle v. State, 100 Fla. 1258, 130 So. 912 (1930). See § 7749, Comp. Gen. Laws (1927).
[6] The statute construed in Tootle tracked the predecessor statute cited in Cannon word for word. See § 7749, Comp. Gen. Laws (1927).
[7] One commentator lauded the DUI manslaughter statute construed in that line of cases as "a valuable adjunct to legislation dealing with manslaughter because it substitutes the factual question of whether the defendant was driving while intoxicated for the nebulous abstraction of culpable negligence." Walter T. Erickson, Legislative Note, Manslaughter by Automobile in Florida, 4 U. Fla. L.Rev. 360, 369 (1951).
[8] Section 860.01(2), Fla. Stat. (1977). The statute provided:

(1) It is unlawful for any person, while in an intoxicated condition or under the influence of intoxicating liquor, model glue, as defined in s. 877.11, or any substance controlled under chapter 893 to such extent as to deprive him of full possession of his normal faculties, to drive or operate over the highways, streets, or thoroughfares of Florida any automobile, truck, motorcycle, or other vehicle. Any person convicted of a violation of this section shall be punished as provided in s. 316.193.
(2) If, however, damage to property or person of another, other than damage resuiting in death of any person, is done by said intoxicated person under the influence of intoxicating liquor to such extent as to deprive him of full possession of his normal faculties, by reason of the operation of any of said vehicles mentioned herein, he shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083, and if the death of any human being be caused by the operation of a motor vehicle by any person while intoxicated, such person shall be deemed guilty of manslaughter, and on conviction be punished as provided by existing law relating to manslaughter.
[9] In a very brief opinion, we again addressed the DUI manslaughter statute in 1986. See Armenia v. State, 497 So.2d 638 (Fla.1986). Under Baker, we found no requirement that the State prove a causal relationship between the defendant's operation of his automobile or his inability to avoid the accident because of his intoxication and the victim's resulting death. Armenia, 497 So.2d at 639. Justice Boyd again dissented, characterizing the disparate penalties associated with DUI, vehicular homicide, and DUI manslaughter-all involving "substantially the same conduct"-as "irrational, arbitrary, oppressive, excessive, and therefore unconstitutional." Id. at 639-40 (Boyd, J., dissenting).
[10] Of note, the 1986 version of the statute construed in Magaw and the 1995 version at issue in this case are precisely the same except for the passage in subsection (1)(a) which now reads "when affected to the extent that the person's normal faculties are impaired" versus the former "his normal faculties."
[11] See, e.g., Foster v. State, 603 So.2d 1312 (Fla. 1st DCA 1992); Kurtz v. State, 564 So.2d 519 (Fla. 2d DCA 1990); Jones v. State, 698 So.2d 1280 (Fla. 5th DCA 1997).
[12] The requested modification to part 2 of the standard DUI manslaughter jury instruction read:

2. (Defendant), by reason of such operation, caused a collision by deviation or lack of care, which was a cause of the death of (victim).
Melvin, 677 So.2d at 1318 (emphasis added).
[13] The term "DUI manslaughter" is used for ease of reference and because that is the statutory description of the crime in Florida. However, equivalent crimes have different descriptions in other states. For example, the similar crime in Colorado is known as "vehicular homicide." Colo.Rev.Stat. § 18-3-106(1)(b)(I) (1999).
[14] Indeed, the Colorado statute leaves no room for interpretation by explicitly stating that "vehicular homicide ... is a strict liability crime." Colo.Rev.Stat. § 18-3-106(1)(b)(I) (1999).
[15] The Utah statute uses the phrase, "operat[es] the vehicle in a negligent manner." Utah Code Ann. § 76-5-207(1)(a) (1999).
[16] The South Carolina statute's negligence element reads: "neglects any duty imposed by law in the driving of the vehicle." S.C.Code Ann. § 56-5-2945(A), (Law Co-op. Supp. 1998).
[17] Cal.Penal Code § 191.5(a) (West 1999).
[18] Cal.Penal Code § 192(c)(3)(West 1999).
[19] The statute, titled "Homicide by intoxicated use of vehicle or firearm," criminalized the actions of:

[Any person who] [c]auses the death of another by the operation or handling of a vehicle, firearm or airgun and while under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance[.]
Wis. Stat. § 940.09(1)(a) (1983).
[20] "When the death of any person other than the operator ensues as a proximate result of an injury received by the operation of any vehicle, the operator of which is under the influence of any intoxicating liquor ... the person so operating such vehicle shall be guilty of driving under the influence of liquor or drugs, resulting in death." R.I. Gen. Laws § 31-27-2.2(a), (1983).
[21] Section 322.34(3), Florida Statutes (1995), provides:

Any person who operates a motor vehicle:
(a) Without having a driver's license as required under s. 322.03; or
(b) While his or her driver's license or driving privilege is canceled, suspended or revoked ... and who by careless or negligent operation of the motor vehicle causes the death of or serious bodily injury to another human being is guilty of a felony of the third degree....
(Emphasis added.)
[22] According to the National Highway Traffic Safety Administration (NHTSA), 17,126 alcohol-related fatalities occurred in the United States during 1996, comprising 40.9% of the total traffic fatalities for the year. U.S. Department of Transportation, National Highway Traffic Safety Administration, Traffic Safety Facts 1996 (visited May 24, 1999) . NHTSA statistics also show that in 32% of all traffic fatalities in 1996, at least one driver or non-occupant (pedestrian) had a blood alcohol concentration of .10 or greater. Further, approximately 1.4 million drivers were arrested in 1995 for driving under the influence of alcohol or narcotics. In Florida, 944 alcohol-related fatalities occurred in 1996, equaling over 33% of the total statewide traffic deaths for the year. Florida Highway Patrol, Crash Statistics (Statewide) (visited May 24, 1999) . The number of alcohol-related traffic crashes in 1996-24,875-is a figure that has remained remarkably constant since these types of statistics were last cited by this Court. See Ingram v. Pettit, 340 So.2d 922, 924 n. 9 (Fla. 1976) (noting that in 1974 alcohol was a contributing factor in 24,869 automobile accidents in Florida) (citing Department of Highway Safety and Motor Vehicles, Traffic Accident Facts 3 (1975)).
[23] Defined as "an element of criminal responsibility; a guilty mind; a guilty or wrongful purpose; a criminal intent." Black's Law Dictionary 985 (6th ed.1990).
[24] Section 782.07(1), Florida Statutes (1997) provides:

The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder ... is manslaughter, a felony of the second degree....
[25] Of course, those are the statutory elements of DUI manslaughter. § 316.193(3), Fla. Stat. (1995).
[26] Put another way, negligence principles are based on how the proverbial reasonable person would act in a particular situation, not how a reasonable intoxicated person would act in that set of circumstances. In other words, intoxication introduces a wholly different dynamic into the calculus that simply is not present in the normal negligence analysis. If taken to its logical extreme, an argument could be made that a reasonable person would never drive while intoxicated, so therefore an intoxicated driver is presumptively negligent. However, as indicated, we need not indulge in such analysis to resolve the issue before us.
[27] See State v. Florida State Imp. Comm'n, 60 So.2d 747 (Fla.1952); Pell v. State, 97 Fla. 650, 122 So. 110 (1929).
[28] That we should feel compelled to do so is unsurprising in light of our over 60 years of case law which unambiguously held that "neither negligence nor proximate causation is an element" of DUI manslaughter. Baker, 377 So.2d at 20; Cannon; Tootle; Roddenberry.
[29] We recognize that the Legislature accords disparate treatment to DUI and DUI manslaughter, for example. On the one hand, driving while drunk is a misdemeanor which requires at least three convictions to earn a year's imprisonment. § 316.193(2)(a)2.c., Fla. Stat. (1995). It will only become a thirddegree felony carrying a potential of five years' imprisonment upon a fourth or subsequent conviction. § 316.193(2)(b), Fla. Stat. (1995). In contrast, a drunk driver whose operation of his or her automobile causes the death of another is guilty of a second-degree felony, carrying a potential fifteen-year prison term. The Legislature clearly has made the policy choice to impose more severe sanctions on the drunk driver who kills someone than on the drunk driver who is fortuitously caught before possibly killing someone. While that may seem a bit unfair, it is hardly irrational.
[30] We exercise our discretion to consider this issue although it is not within the scope of the certified conflict. See PK Ventures, Inc. v. Raymond James & Associates, Inc., 690 So.2d 1296, 1297 n. 2 (Fla.1997) (explaining that "[o]nce a court obtains jurisdiction, it has the discretion to consider any issue affecting the case").
[31] Similarly, the evidence showing that Hubbard had a valid driver's license at the time of the accident, elicited by defense counsel without objection by the State, was not relevant in this case. Upon objection, such evidence should not be admitted on retrial.
[32] See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
[33] I also share Justice Anstead's concerns expressed in his concurring opinion in this case as to the variance between the jury instruction, which uses the terms "caused or contributed to cause" based on Magaw v. State, 537 So.2d 564 (Fla.1989), and the actual language of the statute, which only uses the term "causes."