677 So.2d 1317 (1996)
James D. MELVIN, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1908.
District Court of Appeal of Florida, Fourth District.
July 31, 1996.
Rehearing, Certification, and Clarification Denied August 30, 1996.
Richard L. Jorandby, Public Defender, and Marcy K. Allen, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
STONE, Judge.
Melvin appeals a DUI manslaughter judgment and sentence. We affirm Melvin's conviction, but remand in accordance with our decision in Catholic v. State, 632 So.2d 272 (Fla. 4th DCA 1994), so that the court may delete a provision in the order of probation requiring Melvin to pay for drug testing. See also Kirkland v. State, 666 So.2d 974 (Fla. 1st DCA 1996); Cumbie v. State, 597 So.2d 946 (Fla. 1st DCA 1992).
The victim died from injuries incurred in an automobile collision in which Appellant's van turned in front of the victim's oncoming vehicle. Witnesses testified that a traffic signal facing the oncoming car was green. Appellant claimed that he had a left turn arrow. The accident occurred at 9:00 p.m. There was evidence that Appellant was intoxicated.
We comment only on two points on appeal, the denial of a requested jury instruction and the admission of testimony by the on-scene investigator regarding a method of alcohol and impairment detection known as the Horizontal Gaze Nystagmus (HGN) test.
The standard instruction for the charge of DUI manslaughter reads as follows:
Before you can find the defendant guilt of DUI Manslaughter, the State must prove the following three elements beyond a reasonable doubt:
1. (Defendant) operated a vehicle.
2. (Defendant), by reason of such operation, caused or contributed to the cause of death of the (victim).
3. At the time of such operation (defendant)

*1318 a. [was under the influence of [alcoholic beverages] ... to the extent that [his]... normal faculties were impaired.]
b. [had a blood alcohol level of 0.10 percent or higher.]
Fla. Std. Jury Instr. (Crim.) 71.
Melvin proposed, based on his interpretation of Magaw v. State, 537 So.2d 564 (Fla. 1989), the following modification to part 2 of the standard instruction:
2. (Defendant), by reason of such operation, caused a collision by deviation or lack of care, which was a cause of the death of (victim).
This request was denied.
In Magaw, the supreme court discussed the 1986 change in section 316.1931, Florida Statutes, governing DUI manslaughter. Prior to 1986, DUI manslaughter was a "strict liability" crime, requiring proof only of intoxication and death, with no required showing of causation between the death and the method of operation of the defendant's vehicle. Id. at 565-66. The 1986 amendment to the statute added the element of causation. Id. at 567. However, the supreme court cautioned in Magaw that:
the statute does not say that the operator of the vehicle must be the sole cause of the fatal accident. Moreover, the state is not required to prove that the operator's drinking caused the accident. The statute requires only that the operation of the vehicle should have caused the accident. Therefore, any deviation or lack of care on the part of a driver under the influence to which the fatal accident can be attributed will suffice.
Id. at 567. The standard instruction was amended in 1992 to its present form and Magaw is cited as a reference to that instruction.
Magaw has been interpreted as recognizing that for DUI manslaughter, the state must prove that the defendant was negligent and that this negligence was a contributing cause of the death. See Foster v. State, 603 So.2d 1312 (Fla. 1st DCA 1992), rev. denied, 613 So.2d 4 (Fla.1993); Parker v. State, 590 So.2d 1027 (Fla. 1st DCA 1991), rev. denied, 599 So.2d 1279 (Fla.1992). In Murphy v. State, 578 So.2d 410 (Fla. 4th DCA 1991), disapproved on other grounds, State v. Chapman, 625 So.2d 838 (Fla.1993), we recognized, distinguishing DUI manslaughter from vehicular homicide, that DUI manslaughter "requires proof of simple negligence while operating an automobile under the influence of alcohol." Id. at 411, citing Magaw.
We, nevertheless, find no error in the court's denial of the requested instruction. The standard jury instruction for DUI manslaughter requires a finding that by reason of operation of the vehicle, Melvin caused or contributed to the victim's death. Explicit in this instruction is a determination by the jury of causationMelvin had to cause the death by reason of his operation of his vehicle. Although in Magaw the court elaborated on the meaning of the term "caused," we do not construe that opinion as requiring that the standard instruction be broadened to specify lack of care as a distinct element. For example, based on the standard instruction, if the jury concluded that someone else had caused the death, perhaps another driver, Melvin would be found not guilty. Similarly, if the death was the result of factors beyond Melvin's control, he would be not guilty. Either of these scenarios, not involved here, would preclude a finding of causation and result in a defendant's acquittal as a defendant may be convicted only on proof of causation. We have considered Melvin's argument in reliance on the First District's decision in Foster, 603 So.2d at 1312. However, in Foster, the court did not hold the DUI manslaughter instruction to be per se misleading, nor did it mandate the use of an alternative instruction.
Appellant's second point is the admission of the investigating officer's testimony about the HGN test performed on Melvin. Over Appellant's objection, Officer Watts testified, based on 20 hours of training in 1985 plus a follow-up course a year later, about the HGN test and the physiological cause of the eye movement evaluated during the test. Watts stated that he believed Melvin was impaired. Watts also testified that based on his observations, and after smelling alcohol on Melvin's breath, he instructed the paramedic on the scene to draw blood from *1319 Melvin for a blood alcohol test. Analysis of this sample showed a blood alcohol level of.20. In State v. Meador, 674 So.2d 826 (Fla. 4th DCA 1996), this court concluded that HGN tests are not admissible as evidence until the traditional predicates of scientific evidence are satisfied. On this basis, in the instant case, it was error to admit Watts' HGN testimony. Watts, as a police officer with special training but without scientific expertise, could not provide the necessary predicate. Nevertheless, based on other evidence of impairment, including the Appellant's blood alcohol level of .20, the evidence that his breath smelled strongly of alcohol, and testimony that his demeanor was consistent with intoxication, we find that this error was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
SHAHOOD, J., and RAMIREZ, JUAN, Jr., Associate Judge, concur.