707 So.2d 816 (1998)
Kimberli JORDAN, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3589.
District Court of Appeal of Florida, Fifth District.
February 20, 1998.
*817 James B. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Lori E. Nelson, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Jordan appeals from her adjudication for DUI manslaughter,[1] two counts of DUI damage to a person,[2] and driving with a suspended or revoked license.[3] She was sentenced to 253.75 months for manslaughter (the maximum under the guidelines), 364 days concurrent for the damage counts, and 60 days concurrent for the license count. We affirm.
Jordan's first point on appeal is that the standard jury instruction given in the case,[4] redefines the crime of DUI/manslaughter and lessens the state's burden of proof. Section 316.193 provides that a person commits this crime if he or she operates a vehicle while impaired and causes the death of any human being. The instruction adds the phrase, "caused or contributed to the cause of the death," of the victim.
We could decline to consider Jordan's argument on this point because defense counsel did not object to the instruction at trial. Absent a timely objection at trial, an issue concerning jury instructions can be raised on appeal only if fundamental error occurred. State v. Delva, 575 So.2d 643 (Fla.1991); Castor v. State, 365 So.2d 701 (Fla.1978). See also § 924.051(3), Fla. Stat. (Supp.1996) (an appeal may not be taken from a judgment unless a prejudicial error is alleged and has been properly preserved or constitutes fundamental error).
In any event, we do not think this, if it is in fact an error, constitutes fundamental error in this case. Failure to instruct on an element of a crime about which there is no dispute, does not rise to the level of fundamental error. Delva, 575 So.2d at 645; State v. Austin, 532 So.2d 19 (Fla. 5th DCA), rev. denied, 537 So.2d 568 (Fla.1988). In his closing argument to the jury, defense counsel acknowledged that Jordan had caused the accident in which the passenger of the car hit by Jordan's vehicle suffered injuries leading to her death. He said: "We know my client ran through the stop sign and caused the crash. Nobody's contesting that. She is at fault in this accident." Causation was not an issue in this case.
*818 As her second point on appeal, Jordan contends that Dr. Foster, the emergency room physician who treated her after the accident, should not have been permitted to testify that she had "toxic nystagmus,"[5] or jerky eye movements caused by intoxication with sedative drugs (i.e., alcohol), because the state presented an insufficient predicate to establish the general reliability of a medical test known as "HGN." This test measures the onset of nystagmus by assessing the ability of the eyes to maintain visual fixation as they are turned to the side. The result indicated Jordan was impaired.
Dr. Foster described the HGN test and stated it was common knowledge and common practice for physicians to administer the test and that it is a scientifically reliable and accepted test in the medical community. He conservatively estimated he has performed the test 10,000 times. He admitted he did not know the accuracy rate of the test.
We think this testimony was sufficient to establish a predicate for the test and its results. The evidence established that the test is generally reliable and accepted in the medical community and that Dr. Foster was qualified and trained to administer it. See Frye v. United States, 293 F. 1013 (D.C.Cir. 1923). The defense offered no counter-evidence or testimony on these points. Further, the test has been ruled to be scientific and thus admissible in courts of law in this state. See Meador; Melvin.
Even if this test were not admissible, we think its admission in this case would have been harmless error. See Melvin. Dr. Foster also testified he smelled alcohol on Jordan while treating her in the emergency room, shortly after the accident. He noted she had blood shot eyes and appeared to him to be intoxicated. Other witnesses likewise testified they could smell alcohol on Jordan and that she had other physical appearances of intoxication such as blood shot eyes, slurred speech, and she was staggering and belligerent. Further, the blood test showed her alcohol level was .19.
Jordan's third point on appeal is that the results of her blood test taken at the hospital after the accident should not have been admitted because the state failed to establish a proper chain of custody. Jordan points out there was no evidence of the conditions under which the blood sample was stored while it was in the custody of the Florida Highway Patrol, or in the custody of the United States Post Office en route to the Department of Florida Law Enforcement for testing.
In order to bar the introduction of relevant evidence due to a gap in the chain of custody, the defendant must show that there was a probability of tampering with the evidence. State v. Taplis, 684 So.2d 214 (Fla. 5th DCA 1996), rev. dismissed, 703 So.2d 453 (Fla.1977). A mere possibility of tampering is insufficient. Id.
Here, Jordan failed to establish a probability of tampering with her blood sample. The nurse who obtained the blood sample from Jordan testified that she could not remember whether there was anything in the blood sample tubes when she took the blood sample from Jordan. However, she did state that the tubes had a gray stopper. The state's toxicologist testified that kits that have gray stopper tubes contain an anti-coagulant. The state trooper who supplied the blood sample kit, the nurse who obtained the sample and the state's toxicologist all testified that the kit did not appear to have been tampered with. According to the state trooper, the kit had not expired (perhaps being only a month old) and the kit contained ingredients to preserve blood and did not need to be refrigerated. According to the toxicologist, there was no indication of clotting in the blood. It appeared to be in good condition, and did not appear to have been exposed to heat. Since this evidence failed to show a probability (as opposed to a mere possibility) that the evidence had been tampered with while in the custody of the trooper or in the U.S. mail, *819 the trial court properly admitted this evidence. See Taplis (evidence did not establish probability that vehicle had been tampered with and thus samples taken from vehicles should not have been excluded from evidence based on a gap in the chain of custody where officers and employees of a secure parking lot where the vehicle had been stored all testified that no material changes occurred to the vehicle prior to obtaining samples from it).
Jordan's last point on appeal is that the sentence of 21.1 years, which she received for DUI/manslaughter, exceeds the statutory maximum sentence for that crime. DUI/manslaughter is a second degree felony punishable by up to 15 years in prison. §§ 316.193(3)(c)3 a; 775.082(3)(c), Fla. Stat. (1995). Jordan was sentenced pursuant to the sentencing guidelines. Her sentencing score resulted in a recommended sentence of 203 months, a minimum of 152.25 months and a maximum of 253.75 months (21.1 years). For offenses committed after January 1, 1994 (this incident occurred in 1996), section 921.001(5), Florida Statutes (1995) provides:
If a recommended sentence under the guidelines exceeds the maximum sentence otherwise authorized by section 775.082, the sentence under the guidelines must be imposed, absent a departure.
Jordan argues that section 921.005(5) does not permit a court to sentence outside the statutory maximum unless the entire range exceeds it. We have previously rejected this interpretation. See Mays v. State, 693 So.2d 52 (Fla. 5th DCA), rev. granted, 700 So.2d 686 (Fla.1997); Green v. State, 691 So.2d 502 (Fla. 5th DCA), rev. granted, 699 So.2d 1373 (Fla.1997). We have taken the view that if the sentencing range encompasses and includes the statutory maximum, thereby exceeding the statutory maximum at the upper range, the trial judge may sentence a defendant within the full range set forth in the guidelines.
AFFIRMED.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] § 316.193(1) and (3)(a), (b), and (c)3, Fla. Stat. (1995).
[2] § 316.193(1) and (3)(a), (b), and (c)1, Fla. Stat. (1995).
[3] § 322.34(1), Fla. Stat. (1995).
[4] Fla. Std. Jury Instr. (Crim.) 71.
[5] "Nystagmus" is a physiological condition which refers to involuntary rapid movement of the eyeball, and may be either horizontal, vertical or rotary. Inability of the eyes to maintain visual fixation, as they are turned from side to side is known as horizontal gaze nystagmus. See State v. Meador, 674 So.2d 826, 835 (Fla. 4th DCA), rev. denied, 686 So.2d 580 (Fla.1996); Melvin v. State, 677 So.2d 1317 (Fla. 4th DCA 1996).