982 So.2d 1260 (2008)
Robert ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-5840.
District Court of Appeal of Florida, First District.
June 2, 2008.
David W. Collins of the Law Office of David W. Collins, Monticello, for Appellant.
*1261 Bill McCollum, Attorney General, and Joshua R. Heller, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
Robert Robinson appeals his conviction for causing serious bodily injury while driving under the influence of alcohol, in violation of section 316.193(3), Florida Statutes (2003). He contends the trial court erred by allowing lay opinion testimony about the significance of horizontal gaze nystagmus (HGN) test results. The State concedes error but argues that the error was harmless. We reverse and remand for a new trial.
There is no real dispute about Mr. Robinson's driving having caused an accident in which a motorcyclist suffered serious bodily injuries, including a hip fracture. At issue in the trial was whether Mr. Robinson was under the influence of alcohol at the time of the accident to the extent that his normal faculties were impaired. The State did not prove his blood alcohol level[1] but did adduce, inter alia, testimony from the arresting officer about HGN test results.
In keeping with the general rules governing medical and scientific opinion testimony, the Fourth District held in State v. Meador that opinion testimony relating to HGN test results requires a qualified expert witness:
The HGN test results should not be admitted as lay observations of intoxication because HGN testing constitutes scientific evidence. Thus, although the evidence may be relevant, the danger of unfair prejudice, confusion of issues, or misleading the jury requires the exclusion of the HGN test evidence unless the traditional predicates of scientific evidence are satisfied.
674 So.2d 826, 836 (Fla. 4th DCA 1996), rev. denied, 686 So.2d 580 (Fla.1996). We have adopted this view as our own.[2]See Castillo v. State, 955 So.2d 1252, 1253-54 (Fla. 1st DCA 2007) ("The appellant is correct that such opinion testimony requires an expert witness.").
In the present case, lay opinion testimony pertaining to HGN test results was admitted only over objection, and after defense counsel's request to voir dire the witness had been denied.[3] As the *1262 State concedes, this violated the rule laid down in Meador and adopted by the First District in Castillo. The State argues nevertheless that the error in admitting the HGN testimony does not require reversal, asserting that the error was harmless. But see Goodwin v. State, 751 So.2d 537, 546 (Fla.1999); State v. DiGuilio, 491 So.2d 1129, 1138-39 (Fla.1986). The State points to other incriminating evidence in the record[4] and attempts to analogize the present case to Melvin v. State, 677 So.2d 1317, 1318-19 (Fla. 4th DCA 1996) (holding admission of HGN testimony error where witness was "a police officer with special training but without scientific expertise," while concluding the error was harmless "based on other evidence of impairment, including the Appellant's blood alcohol level of .20"), citing obiter dicta in Jordan v. State, 707 So.2d 816, 818 (Fla. 5th DCA 1998).
Our supreme court has held, with respect to harmless error, that the controlling "question is whether there is a reasonable possibility that the error affected the verdict." DiGuilio, 491 So.2d at 1139. In State v. Lee, the supreme court reiterated its holding in DiGuilio, further explaining:
Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
531 So.2d 133, 137 (Fla.1988) (quoting People v. Ross, 67 Cal.2d 64, 85, 429 P.2d 606, 621, 60 Cal.Rptr. 254, 269 (1967) (Traynor, C.J., dissenting), rev'd, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968)).
The harmless error standard is not whether evidence that was properly admitted would alone have been sufficient to support the verdict. Only if the remaining, properly admitted evidence is of such character that the erroneously admitted evidence could not reasonably have affected or in any way contributed to the verdict does the remaining evidence figure in at all. Here the State not only elicited lay HGN opinion testimony at trial but also made it a feature of its opening statement[5] *1263 and of its closing argument.[6] Emphasizing the erroneously admitted evidence in this fashion bespeaks "a reasonable possibility that the error affected the verdict." DiGuilio, 491 So.2d at 1139.
Even if the State can be heard to argue otherwise at this juncture, its argument rings hollow. In citing Jordan and Melvin for the proposition that the admission of lay opinion testimony as to HGN test results can be deemed harmless error, the State overlooks a critical distinction between the facts of the present case and the facts recited in the Jordan and Melvin decisions. Here the State did not prove Mr. Robinson's blood alcohol level nor offer any other scientific evidence (the inadmissible HGN testimony aside). In contrast, the prosecution in both the Jordan and Melvin cases adduced evidence of blood test results of 0.19, see Jordan, 707 So.2d at 818, and 0.20 grams of alcohol per 100 milliliters of blood. See Melvin, 677 So.2d at 1319. Such evidence of an accused's blood alcohol level is scientific evidence which might well lead a reasonable jury to give no weight whatsoever to other, less definitive evidence. But there was no evidence in the present case comparable to blood alcohol test results.
In the absence of any properly admitted, practically dispositive scientific evidence  and with the other evidence in dispute  lay opinion testimony regarding HGN test results, evidence to which, after all, the State drew the jury's attention both in opening and in closing, cannot be said beyond a reasonable doubt not to have contributed to the jury's verdict.
Reversed and remanded.
LEWIS and ROBERTS, JJ., concur.
NOTES
[1] Mr. Robinson did not provide a breath sample and the law enforcement officers who arrested him failed to obtain blood test results, notwithstanding the duty imposed by section 316.1933(1)(a), Florida Statutes (2003), when there is probable cause to believe someone driving under the influence of alcohol has caused serious bodily injury or death to a human being.
[2] We have not, however, adopted the rule that obtains in the Third District, which requires "a confirmatory blood, breath, or urine test before HGN evidence is admissible." Bowen v. State, 745 So.2d 1108, 1109 (Fla. 3d DCA 1999) (citing Faires v. State, 711 So.2d 597, 598 (Fla. 3d DCA 1998)).
[3] A law enforcement officer testified at trial as follows:

Q: And the Horizontal Gaze Nystagmus 
....
A: This is a known exercise to determine if someone's had alcoholic intake.
....
Q: What did you do?
....
A: I used a pen, held it approximately 12 inches in front [of] his face, hold [sic] my flashlight up like this (indicating) to light up the stimulus. Then I moved the stimulus from one  from the center to right side and then back to the center and then from the center to the left side and back to the center (indicating).
....
Q: ... What are you looking for by doing that?
A: I'm looking for an involuntary jerking movement of the eyes.
At no time was testimony adduced as to any specific angle of deviation from the center line. The questioning continued:
Q: Is that something you used to guide you as to whether someone's under the influence of alcohol to the extent that their normal faculties are impaired?
A: Yes, ma'am.
Q: Okay. And when you're saying involuntary jerking, is that like a stuck windshield wiper, sort of?
A: Kind of.
....
Q: And when you did that, did you observe that?
A: Yes, I did.
....
Q: Okay. Did you believe the defendant was under the influence of alcohol to the extent that his normal faculties were impaired?
A: Yes, ma'am.
[4] Mr. Robinson's sister testified that when she saw him after the accident, he appeared upset and nervous, but did not appear impaired nor exhibit any signs of intoxication. On the other hand, law enforcement officers testified that Mr. Robinson was uneasy on his feet, smelled of alcohol (and mouthwash), and had bloodshot eyes and slurred speech. They testified that they found a bottle of McCormick's gin and a bottle of mouthwash inside Mr. Robinson's vehicle and that he failed to complete various field sobriety exercises successfully.
[5] During her opening argument, the prosecutor said: "And then there's something called the Horizontal Gaze Nystagmus. And the officers [are] going to tell you about that. And this did have to do with the eyes. And he's going to explain that this particular thing that ." Defense counsel objected, arguing: "Facts not in evidence. That requires an expert. I know of no expert here today." The judge ruled: "At this point, I'll sustain the objection."
[6] During her closing argument, the prosecutor said: "And then there was that windshield wiper thing, it was just a guide. Those eyes, that stuck windshield wiper..... [H]e's got eyes that are twitching all over the place."