993 So.2d 105 (2008)
Steven Lawrence THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-4946.
District Court of Appeal of Florida, First District.
October 21, 2008.
Nancy A. Daniels, Public Defender, and David A. Davis, Assistant Public Defender, Tallahassee, for Appellant.
*106 Bill McCollum, Attorney General, and Jennifer J. Moore, Assistant Attorney General, Tallahassee, and Kathy Ray, Assistant State Attorney, Tallahassee, for Appellee.
BENTON, J.
Steven Lawrence Thomas appeals his conviction for second degree murder and the life sentence imposed in consequence. He argues that the trial court erred in denying his request for a special instruction on circumstantial evidence; and in admitting certain hearsay, over defense objection. We find no error in the jury instructions, but agree that allowing the hearsay in was error, reverse for that reason, and remand for a new trial.
On direct appeal of sentence and conviction, we have jurisdiction. See Fla. R.App. P. 9.030(b)(1)(A) (2007). We review the trial court's decision to admit evidence for abuse of discretion, see Ray v. State, 755 So.2d 604, 610 (Fla.2000) (citing Alston v. State, 723 So.2d 148 (Fla.1998)), mindful, however, that the trial court's discretion is delimited and circumscribed by the rules of evidence. See Johnston v. State, 863 So.2d 271, 278 (Fla.2003) (citing Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001)). Hearsay, defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," § 90.801(1)(c), Fla. Stat. (2007), is inadmissible, unless allowed by an exception enacted as a statute, § 90.802, Fla. Stat. (2007), and adopted by our supreme court. See In re Fla. Evidence Code, 372 So.2d 1369 (Fla.1979) (adopting Evidence Code to the extent it is procedural), clarified, In re Fla. Evidence Code, 376 So.2d 1161 (Fla.1979).
Chaka Baldwin, Mr. Thomas's girlfriend of four years, was stabbed to death. No physical evidence tied him to the crime, but the State presented circumstantial evidence in support of its contention that Mr. Thomas was the murderer. One piece of circumstantial evidence was an email written by Natalie Zepp to Michelle McCord, both employees of the apartment complex where Ms. Baldwin and Mr. Thomas shared an apartment. Defense counsel made hearsay objections, not only to the introduction of the email as a whole, but also to the introduction of statements within the email that Ms. Zepp, the employee who wrote the email, reported Ms. Baldwin made to her. The email, with the statements in question underlined, reads:
This resident called and says that she's had someone (Steven Thomas) living in her ap[artmen]t for the past year that is not on the lease and now she wants him out[[1]] but he refuses to leave. What can *107 we do? [H]er number is (754)2241958, but I asked that she call you back tomorrow morning as well.
(Emphasis added). Defense counsel argued that Ms. Baldwin's statement constituted a separate layer of hearsayhearsay within hearsaywhich could not come in without qualifying under an exception of its own.[2]See § 90.805, Fla. Stat. (2007) ("Hearsay within hearsay is not excluded under s. 90.802, provided each part of the combined statements conforms with an exception to the hearsay rule as provided in s. 90.803 or s. 90.804."). Responding to the objection, the State argued that all the information in the email was within the personal knowledge of Ms. Zepp and that the email did not contain hearsay within hearsay.[3] Over objection, the email was admitted in its entirety as fitting within the business record exception[4] to the rule excluding hearsay. See § 90.803(6), Fla. Stat. (2007).
The trial court erred in admitting the underlined portions of the email. While the employee who wrote the email had firsthand knowledge of Ms. Baldwin's desire to evictand could presumably, if asked, have so testifiedthere was no evidence that she had personal knowledge of any of the surrounding circumstances. Although the learned trial judge appeared to recognize this distinctionand ruled handwritten notes made by the employee as to Ms. Baldwin's reasons for wanting to evict Mr. Thomas inadmissible as hearsayhe nevertheless allowed the State to introduce the email without redaction.[5]
*108 The email contains two "levels" of hearsay. The email is itself hearsay because it is an out-of-court statement being offered for the truth of the matters asserted. See § 90.801(1)(c), Fla. Stat. (2007). It is Ms. Zepp's account of what Ms. Baldwin told her. Its accuracy depends both on Ms. Zepp's veracity and on Ms. Baldwin's veracity. Within the emailthe first tier of hearsaylies another layer of hearsay: the statement made by Ms. Baldwin to Ms. Zepp, viz., "that she's had someone (Steven Thomas) living in her ap[artmen]t for the past year that is not on the lease and... he refuses to leave." There was no evidence that Ms. Zepp had firsthand knowledge of these matters. Rather, her "knowledge" that Ms. Baldwin "had someone (Steven Thomas) living in her ap[artmen]t for the past year that is not on the lease and ... [that] he refuses to leave" was hearsay. She was recounting statements she said she heard Ms. Baldwin make. Ms. Baldwin's statements were not, of course, business records themselves. As recounted by Ms. Zepp, they were not admissible, because they did not qualify for an exception to the hearsay rule in their own right. See § 90.805, Fla. Stat. (2007).
Directly on point is our decision in Van Zant v. State, 372 So.2d 502 (Fla. 1st DCA 1979), where we concluded that hearsay, although within exhibits assumed to fall within an exception to the rule excluding hearsay, did not itself qualify under a separate exception to the hearsay rule. On that account, we held it was error to admit the exhibits in evidence, and reversed and remanded for a new trial. Id. at 504.
[The probable cause affidavit and sworn complaint] might qualify under the business record exception to the hearsay rule to the extent that each is an out of court statement of the person who prepared the record in the regular course of business. However, the source of the information contained in the documents was Taylor, not the person who prepared the record. Therefore, not only were the exhibits themselves hearsay, they contained hearsay.
When a business record contains a hearsay statement, the admissibility of the record depends on whether the hearsay statement in the record would itself be admissible under some exception to the hearsay rule. In other words, if the person who prepared the record could not testify in court concerning the recorded information, the information does not become admissible as evidence merely because it has been recorded in the regular course of business.
Id. at 503. See also Neeley v. State, 883 So.2d 861, 863-64 (Fla. 1st DCA 2004) (ruling error reversible where, "[w]hile the medical record itself could qualify under the business record exception, it is clear the contested phrase contained therein could not because the resident who took the statement had no personal knowledge of the facts, and the victim was under no business duty to transmit the statement") (citing Van Zant, 372 So.2d at 503).
The State argues that any error was harmless, but the "harmless error standard is not whether evidence that was properly admitted would alone have been sufficient to support the verdict." Robinson v. State, 982 So.2d 1260, 1262 (Fla. 1st DCA 2008). Admission of hearsay cannot be deemed harmless error if there is a *109 reasonable possibility that it contributed to Mr. Thomas's conviction. See State v. DiGuilio, 491 So.2d 1129, 1138-39 (Fla.1986). The hearsay was used here in an effort to prove motive, a critical component of the State's case, a case that relied solely on circumstantial evidence. The State used hearsay to show a possible reason for Mr. Thomas's wanting to kill his live-in[6] girlfriend of four years. No other evidence tended to show that Ms. Baldwin had asked him to move out and that he had refused to leave.
Not even Ms. Baldwin's "best friend[ ], almost like [a] sister[ ]," testified before the jury to any problems in the couple's relationship. In fact, the best friend testified that she was scheduled to take Mr. Thomas to an appointment the morning after Ms. Baldwin was murdered. The State's harmless error argument on appeal rings hollow against the background of its argument to the jury emphasizing that Ms. Baldwin wanted Mr. Thomas to move out but that he refused,[7] thus making the hearsay "a feature of its ... closing argument." Robinson, 982 So.2d at 1262-63. See also Reyes v. State, 976 So.2d 1169, 1171 (Fla. 1st DCA 2008) (improper admission of evidence not harmless error where prosecutor referred to it during both opening statement and closing argument, and State failed to carry its burden of establishing beyond a reasonable doubt that error did not contribute to defendant's conviction); Valley v. State, 860 So.2d 464, 468 (Fla. 4th DCA 2003) (improper admission of hearsay evidence may have been harmless if the State had not used the evidence "to bolster its case during closing argument"). Under these facts, we cannot agree with the State's contention that any error was harmless.[8] Because there is a reasonable possibility that admission of Ms. Baldwin's hearsay statement that "[Mr. Thomas] refuses to leave" contributed *110 to Mr. Thomas's conviction, we are constrained to reverse for a new trial. See DiGuilio, 491 So.2d at 1138-39.
Reversed and remanded.
VAN NORTWICK and HAWKES, JJ., concur.
NOTES
[1] That "she wants him out" was presumably offered to prove Ms. Baldwin's state of mind during the conversation that led to the email, and at least arguably fell within the "state of mind" exception to the rule excluding hearsay. See § 90.803(3)(a)1., Fla. Stat. (2007) ("A statement of the declarant's then-existing state of mind, ... including a statement of intent, plan, motive, design, mental feeling,... when such evidence is offered to: Prove the declarant's state of mind, ... at that time or at any other time when such state is an issue in the action."). But see C. Ehrhardt, Florida Evidence § 803.3a at 857-58 (2008 ed.) ("In a murder case, hearsay statements made by the victim showing that the victim is afraid of the defendant are not admissible under section 90.803(3) since the state of mind of the victim is not a material issue."); Suarez v. State, 879 So.2d 1251, 1253 (Fla. 3d DCA 2004) ("Although the passenger's statement that she had a 3:00 a.m. curfew was not offered for the truth of the matter asserted and was instead offered to show that the passenger and driver were in a hurry, the proffered statements were inadmissible under the state of mind exception to the hearsay rule because the passenger and driver's state of mind were not at issue."); Johnson v. State, 969 So.2d 938, 951 (Fla.2007) ("Generally, a victim's statement cannot be used to prove the defendant's state of mind. Each of these cases concerned a statement by a victim to a third person expressing fear of the defendant before a murder, which we ruled inadmissible under the state of mind exception to the hearsay rule contained in section 90.803(3)." (internal citations omitted)); Selver v. State, 568 So.2d 1331, 1334 (Fla. 4th DCA 1990) ("Statements of a murder victim that express general fear of the defendant or a concern that defendant may intend to kill the victim are generally inadmissible hearsay." (citing Correll v. State, 523 So.2d 562 (Fla. 1988))).
[2] Defense counsel argued:

This, Ms. Zepp is merely reporting . . . what Ms. Baldwin told her. And I don't think it fits into the business record exception. I mean, it's hearsay in the record. It can be easily redacted. It doesn't have to come in....
...
Your Honor, ... the personal knowledge has to be obtained not through hearsay .... if there's an accident report, the policeman can come and say the headlight is broke and the bumper is bent. But how that got done, if someone says to him, that car ran the red light and that's how it got done, the hearsay part of that doesn't get in under a business record exception .... the case we cited, the how it got done and what was reported as hearsay isn't a partand it can be easily taken out.
[3] The assistant state attorney argued: "Judge, in this particular e-mail, it's from Natalie Zepp, the leasing consultant at Campus Walk at the time of the incident. She does have personal knowledge because she's the one who personally spoke with Chaka Baldwin."
[4] Michelle McCord, the recipient of the email, testified that one of her duties as the property manager of Campus Walk Apartments was to keep track of records pertaining to each of the individual apartments. She inspected the email written by Ms. Zepp, and testified that it was a record kept in the ordinary course of business at Campus Walk Apartments. She testified that the record was made at or near the time that the information it contained was provided by a person with knowledge. Finally, she testified that it was a regular practice of Campus Walk Apartments to keep records such as the email written by Ms. Zepp. After the trial judge determined that "clearly this email is within the firsthand knowledge of Ms. Zepp" and "it's clearly within her duty to try to assist tenants," the trial judge ruled: "assuming that the other requirements for the business record are met, I will admit that part of the record."
[5] The judge stated:

. . . But assuming that the predicate is met, I think that the e-mail is admissible. I find that the handwritten notes are not admissible. They are hearsay within the business record. The fact that they're a business record doesn't cure the fact that they're hearsay. And simply recounting what everybody has told the lady doesn't cure the fact that it's hearsay. But I think the e-mail is in a different category. And assuming that the other requirements for the business record are met, I will admit that part of the record.
[6] That Mr. Thomas had been living in her apartment was established by a variety of non-hearsay evidence and was not really in dispute. Uncontroverted evidence established that Mr. Thomas was living in the apartment at Campus Walk Apartments with Ms. Baldwin at the time of her murder, that the utilities were in Mr. Thomas's name, and that the lease was in Ms. Baldwin's name. Thus, there was no reasonable possibility that admission of that hearsay statement contributed to Mr. Thomas's conviction. See Robinson v. State, 982 So.2d 1260, 1262 (Fla. 1st DCA 2008) ("Only if the remaining, properly admitted evidence is of such character that the erroneously admitted evidence could not reasonably have affected or in any way contributed to the verdict does the remaining evidence figure in at all.").
[7] The assistant state attorney argued:

... The defense wants to talk about supposition? Let's talk about supposition. They want you to believe that it was just a coincidence that eight hours before Ms. Baldwin goes to her leasing office and says I want him out and he is refusing to leave, that then her clothes are packed and there is an argument between her and the defendant, an argument at the time that the coroner, the medical examiner, estimates her time of death.
(Emphasis added.)
[8] Our supreme court has held, as regards to harmless error, that the controlling "question is whether there is a reasonable possibility that the error affected the verdict." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986). In State v. Lee, the supreme court reiterated its holding in DiGuilio, further explaining:

Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
531 So.2d 133, 137 (Fla.1988) (quoting People v. Ross, 67 Cal.2d 64, 60 Cal.Rptr. 254, 429 P.2d 606, 621 (1967) (Traynor, C.J., dissenting), rev'd, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968)).