BENTON, J.
 

 Timothy Walden appeals convictions for second-degree felony murder, armed robbery and aggravated assault on a law enforcement officer. He contends that the trial court erred in allowing in evidence certain hearsay statements. The trial court did err when it allowed the hearsay in over objection, but the error was harmless beyond a reasonable doubt.
 

 “Admission of hearsay cannot be deemed harmless error if there is a reasonable possibility that it contributed to [the] conviction.”
 
 Thomas v. State,
 
 993 So.2d 105, 108-09 (Fla. 1st DCA 2008) (citing
 
 State v. DiGuilio,
 
 491 So.2d 1129, 1138-39 (Fla.1986)). “As a general rule, a trial court’s ruling on the admissibility of evidence will not be reversed, absent an abuse of discretion. However, a court’s discretion is limited by the evidence code and applicable case law. A court’s ... interpretation of these authorities is subject to
 
 de novo
 
 review.”
 
 McCray v. State,
 
 919 So.2d 647, 649 (Fla. 1st DCA 2006) (citations omitted).
 

 At trial, Anisha Patel testified that she was robbed at gunpoint while working as a clerk at Baymeadows Inn and Suites in Jacksonville on the evening of July 24, 2007. After she emptied the cash register — of some $200 to $300 — the robber instructed her to lie down facing a wall. She remained lying on the floor until, after the robber left, a hotel guest entered the lobby and told her to get up. Explaining to the guest that she had just been robbed, she dialed 911. In the course of the phone call, which was recorded and played to the jury, the 911 operator asked whether the robber had left on foot or in a vehicle. Ms. Patel first responded: “On foot as far as I know.”
 

 Before the jury heard it, trial counsel made timely objection on hearsay grounds to a portion of the recording of the 911 call, including the following:
 

 (Ms. Patel:) A red Cadillac.
 

 (911 operator:) Did they say which way he went?
 

 (Ms. Patel:) I guess he must have gone (inaudible)?
 

 (911 operator:) He was on Baymeadows Circle toward Baymeadows Road?
 

 (Ms. Patel:) (Inaudible) I left (inaudible) road to get.
 

 (911 operator:) Okay. Did anybody see any part of the tag at all on the vehicle, tag number or anything?
 

 (Ms. Patel:) No, sir. He just
 
 saw
 
 — he
 
 saw him getting into a red Cadillac.
 
 (911 operator:) Could they tell two door, four door, what kind of Cadillac it was?
 

 (Ms. Patel:) Four door, red Cadillac.
 

 (Emphasis supplied.) The trial court initially deferred ruling on defense counsel’s objection, pending further testimony.
 

 The hotel guest, Dwight Fowler, testified that on the evening of July 24, 2007, he entered the lobby of Baymeadows Inn and Suites to find Ms. Patel lying on the floor; that it was he who told her to get up; that after Ms. Patel informed him she had just been robbed (and placed the 911 call), Mr. Fowler went outside and spotted only one vehicle in the vicinity, a four-door red Cadillac, which was heading toward the highway; and that he called the vehicle description to Ms. Patel, who relayed it to the 911 operator. On cross-examination, Mr. Fowler conceded that
 
 he did not actually see the robber get into the red Cadillac
 
 and that he could not make out who the occupants of the Cadillac were, because it was dark and the vehicle was never less
 
 *797
 
 than some 200 to 300 feet away. He could not identify the defendant at trial.
 

 Arguing that the portion of the 911 tape recording to which the defense had objected was not hearsay, the state asserted it was offered, not for its truth, but simply to explain how police officers obtained a description of the vehicle they chased. Other witnesses testified to a police chase of a red, four-door Cadillac from which (after the police shot and killed the driver) Mr. Walden ultimately emerged. When the question of the admissibility of the 911 tape recurred, the trial court overruled the defense objection, reasoning:
 

 It’s actually second level hearsay analysis because according to Ehrhardt and Florida law, even what the witness was saying while on the stand technically is hearsay, what she told the police as is the second level what was told to her by the other civilian witness. But having analyzed it now and heard the police officer’s testimony,[
 
 1
 
 ] it does explain — in both levels it explains not the truth of the matter asserted but why the police chase the red Cadillac as counsel for the State argued earlier. And therefore, the objection is overruled on both levels of hearsay.
 

 Ms. Patel’s trial testimony, unlike the tape recording of her out-of-court statement, was not hearsay. Hearsay is “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted,” § 90.801(1)(c), Fla. Stat. (2007), and is not admissible, except as provided by statute. § 90.802, Fla. Stat. (2007). Hearsay within hearsay, which describes what she reported on the tape recording that Mr. Fowler had told her, is similarly inadmissible unless “each part of the combined statements conforms with an exception to the hearsay rule.” § 90.805, Fla. Stat. (2007).
 

 The record does not support the notion that it was unimportant to the state’s case whether it was appellant who tried to get away in the red Cadillac. The trial court’s protestations notwithstanding, the state was permitted to put on hearsay to prove the truth of the matter asserted — that Timothy Walden and his cousin (the driver) left the scene of the robbery in the red Cadillac. In closing, the state argued, “It’s not a coincidence that that defendant was in a red Cadillac, the same car seen leaving the robbery at the time of the robbery in the direction from the robbery”; and “[w]ith the evidence you have you know he got into that Cadillac.” The trial court erred by admitting the 911 tape of Ms. Patel’s description of the red Cadillac and her report that the robber was inside, hearsay that did not qualify under any exception to the hearsay rule.
 
 See Conley v. State,
 
 620 So.2d 180, 182-83 (Fla.1993) (out-of-court statement relating accusatory information is hearsay when, regardless of the reason for offering it, the evidence is used to prove the truth of the matter asserted). “[Wjhen the only purpose for admitting testimony relating accusatory information received from an informant is to show a logical sequence of events leading up to an arrest, the need for the evidence is slight and the likelihood
 
 *798
 
 of misuse is great.”
 
 State v. Baird,
 
 572 So.2d 904, 908 (Fla.1990).
 

 This case well illustrates the unreliability of hearsay and the danger of its use. For one thing, cross-examination
 
 [2]
 
 is usually unavailable to test the reliability of hearsay.
 
 See Davis v. Alaska,
 
 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (“Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.”);
 
 Bordelon v. State,
 
 908 So.2d 543, 546 (Fla. 1st DCA 2005) (“[W]e count on cross-examination ... to ferret out the truth from any and all witnesses, and to gain a fuller understanding of the import of their testimony.”).
 

 In the present case, both Ms. Patel and Mr. Fowler were cross-examined about the statements they made out of court. Among the hearsay statements introduced in the 911 recording was Ms. Patel’s assertion that Mr. Fowler “just saw — he saw him getting into a red Cadillac.” This statement was false as cross-examination at trial made clear. Mr. Fowler testified that he did not actually see the robber enter the red Cadillac and could not see the occupants of the vehicle because it was dark and the vehicle was located 200 to 300 feet away from him. Only Ms. Patel was able to identify Mr. Walden (with whom she had also had a conversation 30 minutes prior to the robbery) as the man who robbed her.
 

 Even though testimony on cross-examination rendered the trial court’s error in admitting the hearsay statements in the 911 call harmless beyond a reasonable doubt in the present case,
 
 see State v. DiGuilio,
 
 491 So.2d 1129, 1138-39 (Fla.1986), this case illustrates the most important reason why hearsay should be vigilantly excluded; it may well be unreliable. Had Ms. Patel and Mr. Fowler not taken the witness stand and undergone cross-examination, the inaccuracy in the tape-recorded hearsay statement would not have come to light: the jury would have been left with the mistaken impression, in a case where it was pivotal for the state to place the robber in the red Cadillac, that an eyewitness saw a man get into the red Cadillac outside of the hotel, minutes after the robbery took place. Because the inaccuracy was exposed, however, and the jury heard the account of what happened from
 
 *799
 
 witnesses with firsthand knowledge, the error was cured.
 

 Affirmed.
 

 HAWKES, C.J., and ALLEN, J„ concur.
 

 [1]
 

 . Officer John Williams testified that at 9:40 p.m. on July 24, 2007, after hearing a radio dispatch, he joined in a high-speed chase of a red Cadillac, which was posting speeds up to 80 miles per hour and failing to obey traffic laws; that he saw two individuals inside the vehicle; that, on two occasions during the chase, a gun pointed in his direction was extended through the passenger-side window; and that his pursuit ended when he ran over “stop sticks” that punctured his tires.
 

 [2]
 

 . The potential for unreliability that results from the absence of cross-examination is "probably the most persuasive" reason for excluding hearsay:
 

 The reasons for the exclusion of hearsay evidence are many. Among the most widely accepted are: (1) because hearsay statements are not made under oath, the reliability that an oath provides to evidence is missing; (2) when statements are made outside a courtroom, the jurors cannot observe the demeanor of the declarant and judge his or her credibility in the same manner as they can in determining the weight and reliability that should be given other evidence; (3) the lack of an opportunity to cross-examine the person who made the out-of-court statement to test the person's perception, memory, sincerity, and accuracy of the description of the event raises serious questions concerning the reliability of the statement. The latter justification is probably the most persuasive current reason for the rule. Wigmore's characterization of cross-examination as "beyond any doubt the greatest legal engine, ever intended for the discovery of truth” underlies the exclusion of hearsay testimony. Without the ability to cross-examine a witness regarding his or her ability to observe, remember, and truthfully and accurately recount what occurred, counsel cannot expose any inconsistencies or any inaccuracies in a statement made outside the courtroom.
 

 Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 801.1, at 766 (2009 ed.) (footnotes omitted).