VILLANTI, Chief Judge,
Concurring in part and dissenting in part.
I concur in the majority opinion affirming the trial court’s decision denying Kaseta’s motion for judgment of acquittal because the direct and circumstantial ■evidence was not insufficient as a matter of *703 law to take the question of guilt away from the jury. See State v. Odom, 862 So.2d 56, 59 (Fla. 2d DCA 2003). However, I respectfully dissent from the remaining portions of the majority decision, especially its decision to order a new trial without certain testimony.
I specifically disagree with the majority’s decision to exclude testimony from the victim’s sister, Julie Martin, that her father had told her about a fight between Kaseta and the victim that he had learned of from the victim’s neighbors for four reasons. First, it was not “double” hearsay, or any other form of hearsay for that matter, as opined by the majority. ' This testimony was not offered to prove the truth of the matter asserted, but to explain the sequence of events that resulted in a cold ease being solved. It ultimately explained the recent developments that led to local law enforcement deciding to interview neighbors David Money and Sharon Allen, who had heard the disturbance between the victim and Kaseta that occurred at the victim’s residence the night she disappeared. When Julie Martin recalled her father telling her that he had heard about this fracas from the neighbors, that recent recollection, and not fabrication, was what precipitated her providing her sister Debbie Mellon with this information to take to the police. And once armed with this “new” information, the police reopened the case; as the saying goes, the rest is history. The use of these statements for the purpose of clarifying exactly why the police decided to interview Money and Allen several years after the case went cold does not qualify the statements as hearsay. § 90.801(1)(c), Fla. Stat. (2012) (defining hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted”).
Additionally, Kaseta’s chief complaint on this issue is that he was denied the opportunity to cross-examine Julie- Martin’s father — a gentleman who suffered from memory loss before his demise. But because the complained-of statements, were not used to prove that the victim and Kaseta were fighting the night the victim disappeared, the trial court did not violate Kaseta’s right of confrontation by allowing the statements into evidence. See McWat-ters v. State, 36 So.3d 613, 637-38 (Fla.2010) (“The Confrontation Clause ‘does not bar the use of testimonial statements.for purposes other than establishing the truth of the matter asserted.’ ” (quoting Crawford v. Washington, 541 U.S. 36, 60 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004))). Thus, Kaseta’s inability to cross-examine the father on this point is not a constitutional violation.
Second, Julie Martin’s testimony was properly introduced to bolster Money’s testimony at trial that he had heard the victim and Kaseta fighting the night the victim disappeared. Prior out-of-court statements are admissible nonhearsay when the declarant testifies at trial and is subject to cross-examination prior to the statement’s introduction into evidence, and when the prior Consistent statement is offered to rebut an express or implied charge against the declarant of improper influence, motive, or recent fabrication. See § 90.801(2)(b); Howard v. State, 152 So.3d 825, 828 (Fla. 2d DCA 2014). In the present cáse,' Money testified about the fight prior to the átate proffering Julie Martin’s testimony, and during cross-examination, Money was subjected to questions such' as “[ijsn’t it correct that you hated my client, Mr. Kaseta?” and “[t]he fact is you didn’t like my client, you didn’t like him at all, and you did hate him. Isn’t that true?” and “it wasn’t until 2010 that you come tip with > this story that, oh, I heard a- fight over at that trailer [in] 2010, nine years after Ms. Mimmovich disap *704 peared. Is that correct, sir?” Certainly, these questions could have only been asked to suggest that Money had recently fabricated his version of events. As such, the introduction of Julie Martin’s testimony regarding Money’s prior consistent statements to her father about a fight between the victim and Kaseta the night the victim went missing was not an impermissible use of hearsay to bolster Money’s testimony, but was instead a permissible use of nonhearsay to counter the defense’s implicit charges of fabrication.
Third, Julie Martin’s testimony was du-plicative of other testimony admitted without objection. Prior to Julie Martin testifying, Money testified about the fight between the victim and Kaseta and that he had told Julie Martin’s father about the fight; Debbie Mellon testified that she visited Money and Allen in 2010 as part of an investigation into the victim’s disappearance after Julie Martin “remembered Daddy saying something about the Moneys, what they had told him”; and Allen testified that the police visited her and Money in 2010 after the victim’s family members repbrtéd information regarding the victim’s disappearance that they had learned from Money. In addition, Julie Martin’s testimony was brief in nature, the State never argued it for the truth of the content, and there was sufficient other evidence to support Kaseta’s guilt. An examination of pertinent undisputed facts bears out that no abuse of the trial court’s wide discretion in admitting this testimony for a “limited” purpose occurred.
Fourth, even if the admission of this testimony was error, it was harmless beyond a reasonable doubt. See Thomas v. State, 993 So.2d 105, 108-09 (Fla. 1st DCA 2008) (noting that the admission of hearsay evidence is harmless error when there is no reasonable possibility that the evidence contributed to the defendant’s conviction); see also Torres-Arboledo v. State, 524 So.2d 403, 408 (Fla.1988) (holding that the erroneous introduction of hearsay is harmless error in a criminal case when the wrongfully admitted statement is cumulative to other properly admitted evidence); Boykin v. State, 601 So.2d 1312, 1314 (Fla. 4th DCA 1992) (ruling that the admission of an out-of-court statement could not have been harmful error because the statement was only “a brief moment in the trial,” there was similar evidence admitted without objection, and other evidence directly tied the defendant to the crime); Barnes v. State, 470 So.2d 851, 852 (Fla. 1st DCA 1985) (“Given the substantial evidence establishing Barnes’ guilt, and the brief and abbreviated,nature of the challenged hearsay, we find that the officer’s references to the anonymous phone call were harmless error.”). Accordingly, I would affirm Kaseta’s conviction.
Finally, the majority opinion sets forth in considerable detail its sundry conclusions that much of the testimony at issue was “dubious,” “bizarre,” “far-fetched,” “doubtful,” and that there was a “paucity of evidence.” In my view, these were conclusions for the jury to make or not as it saw fit. See Russ v. City of Jacksonville, 734 So.2d 508, 511 (Fla. 1st DCA 1999) (reaffirming that “the credibility, bias or prejudice of witnesses who testify in a case, as well as the weight to be given their testimony, are a matter for the consideration of and determination by the jury”); Rodriguez v. State, 436 So.2d 219, 220 (Fla. 3d DCA 1983) (noting that the jury, and not the trial court or the appellate court, has the sole responsibility “to assess the credibility of witnesses. We are precluded by law from re-weighing the evidence on appeal and' substituting our judgment for that of the trier of fact”); Bowles v. State, 381 So.2d 326, 328 (Fla. 5th DCA 1980) (“No legal principle is more firmly established in our system of jurisprudence than that which makes the jury *705 the sole arbiter of the credibility of witnesses, including the reasonableness, probability and credibility of a defendant.”); see also State v. Law, 559 So.2d 187, 189 (Fla.1989) (holding that once the State presents sufficient competent evidence from which the jury could infer guilt to the exclusion of all other inferences in a circumstantial evidence case, it is up to the jury to weigh the evidence and determine whether the State’s evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt). In fact, defense counsel capably cross-examined all of the witnesses on the credibility issues raised by the majority and argued in closing the weight to be given to each witness’s testimony. And if one were able to obtain a transcript of the jury deliberations in this case, I dare say it would in nowise resemble portions of the majority’s factual dissertation and analysis which might have occurred with a different jury. But we are not permitted to now reweigh credibility or conclusions a jury may have implicitly made in performing its fact-finding function. See Crain v. State, 894 So.2d 59, 71 (Fla.2004) (“A reviewing court must assess the record evidence for its sufficiency only, not its weight.” (emphasis added)). Therefore, Kaseta’s conviction should stand.